AMBROSE v THE DETROIT EDISON COMPANY

Opinion of the Court

1. Attorney and Client—Liens—Judgment.

The law creates a lien of an attorney upon the judgment or fund resulting from his services and, when an attorney withdraws from a case, his reasons for doing so determine whether the lien will be preserved; he does not forfeit his lien for services already rendered if he is justified in refusing to continue the case but, if he withdraws without cause, he loses the lien.

2. Attorney and Client—Good Cause—Liens.

A trial judge properly imposed an attorneys' lien where plaintiffs' attorneys withdrew prior to settlement or trial but there was good cause for the attorneys to withdraw.

3. Attorney and Client—Withdrawal from Case—Good Cause.

"Good cause" for an attorney to withdraw from a case prior to settlement or trial exists where the client has caused a total breakdown in the attorney-client relationship.

4. Attorney and Client—Withdrawal from Case—Good Cause— Liens—Discretion.

A client's total failure to cooperate with his attorney is sufficient "good cause" to allow an attorney to discontinue representing his client and to recover for his services; the decision as to whether an attorney's lien should be imposed lies within the trial court's discretion.

5. Attorney and Client—Withdrawal from Case—Settlement Offer.

A client has control of a lawsuit and can refuse even the most reasonable settlement offer; the refusal to settle by a client can never be sufficient grounds to constitute "good cause" for an attorney to withdraw but may be so irrational as to constitute one factor in evaluating his cooperation with his attorney.

References for Points in Headnotes
[1–6] 7 Am Jur 2d, Attorneys at Law §§ 143, 144, 272 et seq.
[7, 8] 8 Am Jur 2d, Attorneys at Law §§ 222, 229, 261.

6. Attorney and Client—Withdrawal from Case—Good Cause—
Settlement Offer.

There was "good cause" for attorneys to withdraw from a case for retirement benefits where there was a total lack of communication between the client and his attorneys, and, among other things, the client refused to elect between the various payment options in a pension plan despite advice by his attorneys that he was legally obligated to do so, and the client made an irrational rejection of a settlement offer which embodied virtually all of the relief he demanded in his complaint.

7. Attorney and Client—Withdrawal from Case—Liens—Quantum Meruit.

An attorney on a contingent fee arrangement who is wrongfully discharged, or who rightfully withdraws, is entitled to compensation for the reasonable value of his services based upon *quantum meruit* and not the contingent fee contract; therefore, a trial judge should have impressed a lien for the *quantum meruit* measure of the reasonable value of the services rendered rather than impressing a lien set at the contingent fee percentage of the offer of settlement where attorneys properly withdrew from a case for retirement benefits.

Concurring in Part and Dissenting in Part by V. J. Brennan, J.

8. Attorney and Client—Withdrawal from Case—Remand—Evidentiary Hearing—Quantum Meruit.

*A trial judge properly allowed attorneys to withdraw from a case but there is no need to remand the case for an evidentiary hearing on the reasonable value of the services rendered by the attorneys prior to their withdrawal where the lien amounted to 35 percent of the recovery and where the judge knew as much about the efforts of counsel and the quantum meruit when he determined the amount of the lien then as he would after another hearing.*

Appeal from Wayne, Peter E. Spivak, J. Submitted June 9, 1975, at Detroit. (Docket No. 21489.) Decided November 12, 1975. Leave to appeal applied for.

Complaint by Joseph S. Ambrose and Florence E. Ambrose against The Detroit Edison Company and others for accrued pension benefits, the right to receive retirement benefits in the future, and

exemplary damages. Colista, Baum & Domonkos, plaintiffs' attorneys, withdrew prior to settlement or trial and intervened seeking an attorneys' lien. The trial judge ordered a lien of 35 percent of the Detroit Edison offer of settlement. Plaintiffs appeal. Remanded.

*Charles Burke,* for plaintiffs.

*Colista, Baum & Domonkos,* for intervenors.

Before: BRONSON, P. J., and V. J. BRENNAN and D. E. HOLBROOK, JR., JJ.

BRONSON, P. J. In this case, the trial judge allowed plaintiffs' attorneys to withdraw prior to settlement or trial, and imposed a lien for the value of their services. The propriety of that action is questioned here.

On October 26, 1971, plaintiffs filed a complaint against the Detroit Edison Company alleging denial of certain vested pension benefits owed to Joseph Ambrose by virtue of his prior employment with that company. Joseph Ambrose has been pursuing various claims relating to his dismissal in 1958 since that time, but all previous causes of action had been resolved against him. Plaintiffs specifically sought here all accrued benefits from the date Joseph Ambrose reached 65, the right to receive retirement benefits in the future, and $100,000 in exemplary damages for the willful refusal of Detroit Edison to pay such pension benefits.

Plaintiffs' attorneys, the law firm of Colista, Baum & Domonkos, completed extensive discovery over the course of several years. Additionally, both parties and their attorneys participated in long negotiations, with an eye toward settlement. Some-

time around June, 1974, Detroit Edison made an offer which would give plaintiffs all accrued pension benefits at 8% interest, all current retirement benefits, the listing of Joseph Ambrose's name in the directory of retired Detroit Edison employees, and $30,000 in exemplary damages. Plaintiff Joseph Ambrose refused to accept that offer, and the attorneys moved to withdraw on June 14, 1974.

The attorneys specifically alleged in their motion that the following grounds existed to show good cause for withdrawal: (1) that Joseph Ambrose refused to accept a settlement offer which was "fair, reasonable, equitable, and in the best interests of Plaintiffs", without giving sensible and legitimate reasons; (2) that continuing the case would be a waste of judicial manpower, in violation of the court rules, and "perhaps" in violation of the Canons of Ethics; (3) that the attorneys had the "reasonable apprehension" that plaintiffs would take "nothing or substantially less" on the exemplary damage claim if the case went to trial; and (4) there was a breakdown in the attorney-client relationship. The trial judge allowed the attorneys to withdraw after an extended hearing on the motion, and impressed a lien upon any future settlement or judgment. The lien was set at the contingent fee percentage (here, 35%) of the Detroit Edison offer, found to be $21,420.39.

Plaintiffs entered into a consent judgment on August 13, 1974, accepting an offer identical or nearly identical to the previous offer in June, 1974. The only possible difference was that pension benefits were to be paid in increasing increments, which may or may not be equal to the cost-of-living increases under the previous offer. All other provisions were the same.

The law creates a lien of an attorney upon the

judgment or fund resulting from his services, *Wipfler v Warren,* 163 Mich 189, 194; 128 NW 178 (1910), *Kysor Industrial Corp v D M Liquidating Co,* 11 Mich App 438, 445; 161 NW2d 452 (1968), *Miles v Krainik,* 16 Mich App 7, 9; 167 NW2d 479 (1969). When an attorney withdraws from a case, his reasons for doing so determine whether the lien will be preserved:

"An attorney who withdraws from a suit without cause loses his inchoate right to a lien on the ultimate recovery * * * . But where an attorney is justified in refusing to continue in a case, he does not forfeit his lien for services already rendered." 7 CJS, Attorney and Client, § 220, pp 1164–1165.

See, also, *Midvale Motors v Saunders,* 21 Utah 2d 181; 442 P2d 938 (1968), *Schwartz v Jones,* 58 Misc 2d 998; 297 NYS2d 275 (1969). Since the record here shows good cause for the attorneys to withdraw, we hold that the trial judge properly imposed an attorneys' lien in this case.

It is clear that "good cause" exists when the client has caused a total breakdown in the attorney-client relationship. For example, in *Genrow v Flynn,* 166 Mich 564; 131 NW 1115 (1911), the client sent a disparaging telegram to his attorney. The Court decided that withdrawal was proper, and discussed the attorney-client relationship in general:

"The relations between attorney and counsel are of a delicate and confidential nature. They should have faith in each other, and their relations should be such that they can cordially co-operate. What is a sufficient cause to justify an attorney in abandoning a case in which he has been retained has not been laid down by any general rule, and in the nature of things cannot be; but where, as in this case, the plaintiff, even if he has any

ground for communicating with his attorneys, instead of doing so by mail under the secrecy of the postal laws, seeks to degrade and humiliate them by sending a telegram in which he states that they have been guilty of falsehood and gross fraud and neglect, and that he does not intend to stand their abuse any longer, it must be held that such conduct is equivalent to a discharge of his counsel, and a breaking off of the confidential and delicate relation theretofore existing between them. Such conduct must result in the destruction of all faith in each other and render it impossible for them to further co-operate." 166 Mich, at pp 567–568.

We feel that it follows from that view of the rôle of an attorney that a client's total failure to cooperate is sufficient "good cause" to allow an attorney to discontinue representing his client and to recover for his services.

The decision as to whether an attorney's lien should be imposed lies within the trial court's discretion, *Horvath v Vasvary,* 246 Mich 231; 224 NW 365 (1929). The wisdom of that rule is illustrated here, for the trial judge was the one thoroughly familiar with the background of the case and the parties, and who had been in contact with Joseph Ambrose and his attorneys through long settlement sessions. Recognizing that the trial court therefore is in a better position to judge the conduct of the parties to this dispute, we hold that the record supports the determination of good cause for withdrawal.

One needs only to read the transcript of the hearing on the motion to withdraw to discover a total lack of communication between Joseph Ambrose and his attorneys by that time. A complete recitation of the actions of Joseph Ambrose, indicating that it was his unwillingness to cooperate with his attorneys which caused the problems, would occupy too much space here. However, two

particularly illuminating examples will be discussed.

Joseph Ambrose refused to elect between the various payment options in the Detroit Edison pension plan despite advice by his attorneys that he was legally obligated to do so. Mr. Ambrose was not called upon to give up any rights, but merely to decide whether benefits were to be based upon his life or both his life and his wife's. Ordinary Detroit Edison employees must make that election prior to retirement, a time long since past for Joseph Ambrose, so Detroit Edison had a legal right under the contract to require him to elect an option. Detroit Edison could not even determine if Mrs. Ambrose was a proper party plaintiff prior to an election. The steadfast refusal by Mr. Ambrose to follow this required legal procedure, even when ordered to do so by the trial judge, indicates an attitude standing in the way of the successful handling of this lawsuit by his attorneys.

Joseph Ambrose also refused to accept a settlement offer, which embodied virtually all of the relief he demanded in his complaint, without stating coherent reasons for doing so. About all the trial judge could garner from his statement was an attitude of "getting back" at Detroit Edison:

"*The Court:* All right. Then they've advised you of that before. Mr. Ambrose, I tell you something because I have tried to help you. I believe these men have. Mr. Ambrose, I think the problem is you'd miss this law suit if it went away. I think that's the problem. It wouldn't be in your mind every day and you wouldn't be going after them every day and I think that's your basic problem, Mr. Ambrose.

\* \* \*

"*The Court:* Mr. Ambrose, you're grasping at every

straw you can to keep this case going. That's what
you're doing and I know it is and you know it is."

An irrational rejection of the settlement offer such
as we had here made intelligent decisions by plain-
tiffs' attorneys virtually impossible, for they could
not even tell which areas should be pushed harder
in their negotiations with Detroit Edison. Again, a
completely uncooperative attitude was evinced by
Mr. Ambrose in his dealings with his attorneys.

We want to emphasize, however, that we view
this case as embodying extreme circumstances, as
we emphatically reassert the view that the client
has control of the lawsuit, and can refuse even the
most reasonable settlement offer. See, for example,
*Suffolk Roadways, Inc v Minuse,* 56 Misc 2d 6; 287
NYS2d 965 (1968). The refusal to settle by a client
can never be sufficient grounds to constitute "good
cause" for an attorney to withdraw, but, as here,
may be so irrational as to constitute *one factor* in
evaluating his cooperation with his attorney.

This type of case is one in which the trial judge
is in the best position to examine the causes of
obvious breakdowns in the attorney-client relation-
ship. Here, we have found ample support in the
record for the trial judge's finding of "good cause"
to withdraw. An attorney's lien could properly be
imposed upon any future recovery by plaintiffs.

Although we hold that a lien could be properly
imposed, we cannot agree with the trial judge's
method of calculating the amount covered by that
lien. Although no Michigan case has decided this
issue, the majority view is that an attorney on a
contingent fee arrangement who is wrongfully
discharged, or who rightfully withdraws, is enti-
tled to compensation for the reasonable value of
his services based upon *quantum meruit,* and not
the contingent fee contract. See, *Hubbard v Goffi-*

*nett,* 253 Ky 779; 70 SW2d 671 (1934), *Paolillo v American Export Isbrandtsen Lines, Inc,* 305 F Supp 250 (SD NY, 1969), *Fracasse v Brent,* 6 Cal 3d 784; 100 Cal Rptr 385; 494 P2d 9 (1972), *People v Radinsky,* 182 Colo 259; 512 P2d 627 (1973), *Wright v Fontana,* 290 So 2d 449 (La App, 1974). The rationale for that rule was explored in *Fracasse v Brent, supra,* 6 Cal 3d at pp 789–790; 100 Cal Rptr, at pp 388–389, 494 P2d, at pp 12–13.

"The right to discharge is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered. * * *. The uncertain position of the client in such circumstances is illustrated by the record in the present case where the trial court found the discharge was without cause and this court has made a contrary finding and concluded the discharge was justified. Unless a rule is adopted allowing an attorney as full compensation the reasonable value of services rendered to the time of discharge, clients will often feel required to continue in their service attorneys in whose integrity, judgment or capacity they have lost confidence."

We agree with that reasoning and adopt the rule here.

The trial judge properly allowed the attorneys to withdraw, but he should have impressed a lien for the *quantum meruit* measure of the reasonable value of the services rendered.[1] Accordingly, we retain jurisdiction and remand the case to the trial

---

[1] *See, Paolillo v American Export Isbrandtsen Lines, Inc,* 305 F Supp 250 (SD NY, 1969), for a good explanation of the method used to determine the reasonable value of services provided by attorneys.

judge for an evidentiary hearing on the reasonable value of the services rendered by Colista, Baum & Domonkos prior to their withdrawal.

V. J. BRENNAN, J. *(concurring in part; dissenting in part)*. I concur that the trial judge properly allowed the attorneys to withdraw. I also feel that the trial judge was very thorough in reviewing these claims and therefore was thoroughly familiar with the case. For that reason I see no need to remand, he knew as much about the efforts of counsel and the *"quantum meruit"* then as he would after another hearing.

I would affirm without remand.