David T. STALL, Appellant,

v.

FIRST NATIONAL BANK OF BUHL, Respondent.

No. C8-85-511.

Court of Appeals of Minnesota.

Oct. 22, 1985.

Patrick J. Roche, Virginia, for appellant.

David R. Von Holtum, Von Holtum, Hand, Malters and Shepherd, Worthington, for respondent.

Heard, considered and decided by POPO-VICH, C.J., WOZNIAK and HUSPENI, JJ.

## OPINION

WOZNIAK, Judge.

Appellant David Stall, an attorney, brought this action against the First National Bank of Buhl to recover attorney's fees on two collection matters undertaken by him on behalf of the bank. The trial court found that Stall was not entitled to a contingent fee on the first matter and that he was not entitled to his fee on an hourly

basis on the second matter, and entered judgment for the bank. Stall appeals from the judgment. We affirm in part and reverse in part.

## FACTS

David Stall is an attorney who practices in the area of creditor collection. He brought this action against the First National Bank of Buhl to recover fees allegedly due him for two collection matters undertaken for the bank.

Steven Weisz, then president of the bank, met with Stall in 1980 and asked Stall to represent the bank on several collection files, including the two at issue here. Stall and the bank reached a fee agreement, which is set out in a letter from Stall to the bank dated March 27, 1980. This letter states:

> The fee agreement is, as we discussed, a one-third (⅓) contingent fee on all *amounts realized* on normal collection litigation with all costs guaranteed by the client. The costs that I am referring to are for out-of-pocket costs for matters such as sheriff's fees, filing fees, etc. The ⅓ contingent fee agreement would not apply to actions such as mortgage forclosures or litigation which ultimately would result in the file being referred to attorneys in other areas for collection. Those matters would be billed on an hourly rate at $60.00 per hour, again plus costs.

(Emphasis added.)

*The Roberts matter:* The first of the two collection matters undertaken for the bank by Stall involved a debtor named Samuel Roberts. Roberts owed the bank approximately $8,500 on a promissory note. Roberts was no longer in Minnesota. In 1982, Stall located a house in Chisholm, Minnesota that was owned by Samuel Roberts in joint tenancy with his ex-wife, Diane Roberts. In a letter dated July 15, 1982, Stall advised the bank that it should immediately levy on Samuel Roberts' one-half interest in the property.

In the same letter, Stall discussed the fee arrangement on the Roberts file:

> You raised the issue of the fee agreement on this file during our discussion on July 13, 1982. The general fee agreement between the bank and myself is a one-third contingent fee on all *amounts collected* with out-of-pocket expenses to be paid by the bank. * * *
>
> The understanding on this file was that I would review the file on a regular basis, since we had not located assets in the state of Washington through an attorney there. * * *. It was further my understanding, that if I was able to effect a recovery here in Minnesota on this file, that I would be paid *the normal contingent fee.* This is particularly true, since the bank did not want to incur fees on an hourly basis after docketing the judgment in the State of Washington. This is the agreement that I have been proceeding under since my bill of November 18, 1980.

(Emphasis added.)

A levy of execution was made on Samuel Roberts' interest in the house and the bank bought his interest at the sheriff's sale on October 13, 1982. The bank bid the amount that would satisfy the judgment against Samuel Roberts and paid the expenses of the sale.

Stall also attempted to levy against Diane Roberts' interest in the house. The notice of sale offered for sale the entire undivided interest of both Samuel and Diane Roberts. Diane, however, was occupying the house as her homestead. Her interest was therefore exempted from seizure or judicial sale by Minn.Stat. § 510.01 (1984). She obtained a court order enjoining the bank from levying on her interest.

As a result of the sale, the bank obtained Samuel Roberts' interest in the property. Stall admitted on cross-examination that the bank's interest was not saleable at this time. A realtor testified that as long as Diane Roberts retained her interest in the

house, he could not put a value on the bank's one-half interest.

Approximately one month after the sheriff's sale, Stall billed respondent for one-third of the amount Stall, on behalf of the bank, had bid for Samuel Roberts' one-half interest in the house. No amount had yet been realized by the bank. Stall claims, however, that a contingent fee was earned because he and the bank agreed to modify the contingent fee agreement (for one-third of amounts collected) to provide that the bank would seek to recover an interest in real estate rather than cash. There is no written evidence of such an agreement in the record.

Weisz, in a letter dated November 16, 1982, questioned Stall's bill. This letter stated:

I have no problems with your receiving ⅓ of the amount collected in this matter as we previously discussed. However, to date nothing has been collected. Please refer to your letter dated July 15, 1982, wherein you explain that under the general fee agreement the fee is based on "all amounts collected."

The first discussion I had with you on this matter was July 13, 1982, at which time I indicated I was not interested in incurring any additional expense beyond the $600 or $700 you told me the total would not exceed. It was also my understanding that your fees would come from the money collected when it was collected and that all expenses would be deducted from your portion.

Weisz' letter then asks Stall several specific questions regarding the bank's interest in the property:

1. How and when is the bank going to benefit by this action? How much will we receive and when?

2. Just what is our priority position on this property?

3. What is the value of this property to the bank? If the property cannot be liquidated what has this accom-

plished? If this is the case it would appear the bank has incurred a liability rather than an asset.

The letter concludes by requesting Stall's "prompt response."

In a letter to the bank dated November 26, 1982, Stall took the position that this letter from Weisz constituted a termination of his services on the Roberts file.

*The Wakefield matter:* The second collection matter for which Stall is attempting to recover a fee involves two debtors named Raymond and Carole Wakefield. Stall had undertaken this matter on the usual contingent fee basis. He claims, however, that when the bank terminated him with regard to the Roberts matter, he was unable to continue representation in the Wakefield matter. Stall took the position that he could not represent the bank on one case at the same time that he was involved in a dispute with the bank over fees on another case. He therefore submitted his bill on the Wakefield matter on an hourly basis. No amounts had yet been collected on the Wakefield file.

*The trial court's findings:* The trial court found that the fee agreement regarding both the Roberts and Wakefield matters was the normal contingency fee of one-third of all amounts realized. The court found that no amount had been realized on either matter; that Stall voluntarily terminated his employment by the bank on both matters; that the bank did not terminate Stall on either matter; and that Stall's termination of his services was not justified.

## ISSUES

1. Did the trial court err in finding that no contingent fee has yet been earned on the Roberts matter?

2. Did the trial court err in finding that appellant's termination of his employment on the Wakefield matter was unjustified?

## ANALYSIS

■ Appellant did not make a motion for a new trial in this case. When a motion for

a new trial is not made, the only issues on appeal are "whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976); *Meyer v. Mason Publishing Co.*, 372 N.W.2d 403, 404 (Minn.Ct.App.1985). The trial court's findings of fact will not be set aside unless clearly erroneous. Minn.R. Civ.P. 52.01.

1. Here, the evidence sustains the trial court's findings with regard to the Roberts matter. There is no written evidence of the contract modification which Stall alleges. Stall testified on cross-examination that he "told Mr. Weisz" that he, Stall, would get one-third of the bank's bid at the sheriff's sale, but when asked whether he ever stated that in a letter, Stall replied only, "The letter speaks for itself." The letter in question, dated July 15, 1982, makes no mention of Stall collecting one-third of the amount bid at the sheriff's sale. In fact, it specifically states that the general fee agreement between Stall and the bank is "a one-third contingent fee *on all amounts collected.*" (Emphasis added.)

Weisz, on the other hand, testified that he recalled no agreement that the bank would pay Stall one-third of the amount bid at the sale, and that his understanding was that "amounts collected" meant "cash in hand."

■ When determinations of fact turn on oral testimony, this court must defer to the trial court's assessment of the credibility of the witnesses and the weight to be given their testimony. Minn.R.Civ.P. 52.-01; *Fontaine v. Hoffman*, 359 N.W.2d 692, 694 (Minn.Ct.App.1984); *Estate of Serbus v. Serbus*, 324 N.W.2d 381, 384–85 (Minn. 1982). Here, the trial court found that the fee agreement on the Roberts matter was a contingent fee of one-third of all amounts realized, and that no amounts were realized on that file. These findings were not clearly erroneous.

■ Because no amounts have yet been realized on the Roberts file, Stall is not entitled to a contingent fee at this time. He will be entitled to his contingent fee if and when the bank realizes an amount on this matter.

■ The trial court found that the bank did not terminate Stall with regard to the Roberts matter, and that Stall voluntarily terminated his own employment with regard to both the Wakefield and Roberts matters. This finding is supported by the evidence. Weisz' letter of November 16, 1982 does not mention termination. It questions Stall's fee and asks a series of specific questions. It obviously seeks further discussion and clarification of the matter. Stall's letter of November 26, 1982 is the first to mention termination. Stall admitted on cross-examination that he never discussed termination with the bank. In light of this evidence, it cannot be argued that these findings were clearly erroneous.

2. The trial court found that the fee agreement on the Wakefield matter was the usual contingent fee of one-third of all amounts realized, and that no amounts were realized on that file.

■ The trial court also found, however, under a very limited record, that Stall's termination of his services on the Wakefield matter was unjustified. We hold that there is insufficient evidence in the record to support this finding. While Stall's termination of his services on the Roberts matter may have been premature, there is nothing in the record to support the conclusion that Stall was unjustified in his belief that he could not effectively represent the bank on the Wakefield matter while he was engaged in an ongoing dispute with the bank on the Roberts matter.

An attorney on a contingent fee arrangement who is discharged by his client is entitled to compensation for the reasonable value of his services, based on quantum meruit, not on the contingent fee contract. *See Burns v. Stewart*, 290 Minn. 289, 301,

188 N.W.2d 760, 767 (1971). Although no Minnesota case has decided the issue, the same rationale applies when the attorney rightfully withdraws from the representation. *See Ambrose v. Detroit Edison Co.,* 65 Mich.App. 484, 487–88, 237 N.W.2d 520, 524 (1975); *In re Spellman,* 4 A.D.2d 215, 164 N.Y.S.2d 182 (1957). Under the unusual facts of this case, we hold that Stall's withdrawal from the Wakefield matter was not unjustified and he may still maintain an action in quantum meruit on this matter.

## DECISION

1. The trial court's finding that no contingent fee has yet been earned on the Roberts matter is affirmed.

2. The trial court's finding that appellant's termination of his employment on the Wakefield matter was unjustified is reversed.

Affirmed in part and reversed in part.