**Anita ASHFORD, Respondent,**

v.

**INTERSTATE TRUCKING CORPO-RATION OF AMERICA, INC., et al., Defendants,**

**Selmer Law Firm, P.A., Appellant.**

**No. CX–94–1277.**

Court of Appeals of Minnesota.

Dec. 6, 1994.

Andrew M. Silverstein, Strifert Law Firm, Minneapolis, for respondent.

Scott E. Selmer, Marc M. Berg, Selmer Law Firm, P.A., Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and KALITOWSKI and HARTEN, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant Selmer Law Firm, P.A. seeks review of the district court's determination as to the amount of appellant's attorney's lien, contending the district court erred in not calculating the lien based upon appellant's hourly fees. Respondent cross-appeals, contending the district court erred in finding that appellant had a valid lien.

## FACTS

In 1990, appellant began representing respondent Anita Ashford in a personal injury action. Payment for appellant's services was based on a contingency fee contract. During the course of appellant's representation, a

dispute arose concerning whether the rules of discovery required Ashford to sign certain authorizations. Eventually, the defendants brought a motion to compel, which the district court granted. In addition, appellant was assessed defendant's costs for bringing the motion.

Subsequently, appellant notified Ashford that she needed to sign the authorizations. After repeated failed attempts to get Ashford to sign the forms and after warning Ashford that failure to sign would result in withdrawal, appellant withdrew from representation of Ashford.

Appellant then filed an attorney's lien pursuant to Minn.Stat. § 481.13 (1992). Ashford hired the Strifert Law Firm (Strifert) to pursue her personal injury claim on a contingency fee basis and also moved to discharge appellant's lien. The district court denied the motion, finding that appellant had justifiably withdrawn from representation, and therefore had the right to impose a lien.

The personal injury lawsuit settled, and Ashford received $25,000. A hearing was then held to determine the amount of appellant's lien. Appellant submitted evidence showing it had incurred $1,379.79 in expenses, and $20,132.50 in attorney fees as calculated on an hourly basis. The district court awarded appellant its expenses and found that because each law firm contributed roughly equally to the final result, and each firm benefitted from the other firm's efforts, that based upon quantum meruit, each firm should receive half of Strifert's one-third contingency fee.

## ISSUES

1. Did the district court err in finding appellant had a valid lien?

2. Did the district court err in not awarding appellant its fees based upon its hourly rates?

## ANALYSIS

### I.

■ Questions as to the validity of an attorney's lien are issues of fact. *Lende v. Canby Hereford Farms Co.,* 177 Minn. 318,

320, 225 N.W. 150, 151 (1929). Findings of fact shall not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01.

■ Minn.Stat. § 481.13 (1992) provides that once a proceeding is commenced, an attorney has a lien for compensation on any money involved. An attorney continues to be entitled to compensation for the reasonable value of his or her services after the attorney rightfully withdraws from representation. *Stall v. First Nat'l Bank of Buhl,* 375 N.W.2d 841, 845–46 (Minn.App.1985). Minn. R.Prof. Conduct 1.16(b) lists five situations in which an attorney may permissibly withdraw from representing a client:

(1) the client has used the lawyer's services to perpetrate a crime or fraud;

(2) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(3) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(4) the representation has been rendered unreasonably difficult by the client; or

(5) other good cause for withdrawal exists.

■ The district court found that appellant's withdrawal "appear[ed] to be justified by paragraphs 2, 3, 4, and 5. For whatever reason, it is clear that the attorney-client relationship had broken down." Evidence in the record supports these findings. Because Ashford's actions justified appellant's withdrawal, the district court did not err in denying Ashford's motion to discharge the attorney's lien.

### II.

■ The issue of what method to use to calculate the amount of an attorney's lien is a question of law subject to de novo review. *In re L-tryptophan Cases,* 518 N.W.2d 616, 619 (Minn.App.1994). In *Stall,* this court held that an attorney who rightfully withdraws is entitled to compensation for the reasonable value of his or her services, based not upon the contingency fee contract, but upon quantum meruit. 375 N.W.2d at 845–

46. We did not, however, explain how quantum meruit is to be calculated.

Appellant argues that under *L-tryptophan*, a contingency fee attorney who is discharged by the client is always entitled to fees based upon his or her hourly rate. Appellant proposes that the same rule apply in withdrawal cases.

To the extent *L-tryptophan* states that all discharged contingency fee attorneys must be paid on an hourly basis, we disagree. The case on which *L-tryptophan* relied, *Empro Corp. v. Scottland Hotels, Inc.*, did not hold that quantum meruit *must* be calculated on an hourly basis. 449 N.W.2d 734, 737 (Minn. App.1990). Rather, *Empro* held that under the attorney's lien statute, "courts clearly have authority to determine the proper amount to be awarded in fees," and that the determination is based on quantum meruit. *Id.* The concept of quantum meruit does not require that attorneys be paid on an hourly basis. Such a rigid rule would not allow due consideration to the relevant circumstances surrounding either a discharge or a withdrawal.

Under Minn.Stat. § 481.13, courts have the authority to determine the proper amount of an attorney's lien. *Id.* This calculation may be based on an hourly rate because calculating fees on an hourly basis is convenient and will often result in a just award, given the attorney's expertise and the time expended on the case. In other situations, however, it may be more appropriate to examine other factors surrounding the representation in determining the amount of an award. The award, however, may not be based on the terminated contingency fee contract. *Trenti, Saxhaug, Berger, Roche, Stephenson, Richards, & Alumi, Ltd. v. Nartnik*, 439 N.W.2d 418, 420 (Minn.App.1989) (contract is terminated in discharge cases), *pet. for rev. denied* (Minn. July 12, 1989); *see Stall*, 375 N.W.2d at 846 (same rationale applies in withdrawal cases).

Appellant argues that in the present case, the court improperly based its award on the fact that appellant had a contingency fee contract with Ashford. We agree that the district court should not have referred to appellant's contingency fee contract as a basis for the award. Nevertheless, we affirm the award because the court properly examined a number of factors that support its determination.

This multi-factor approach was used in *L-tryptophan* where, as here, two law firms wanted a share of the same client's recovery. 518 N.W.2d at 621. In *L-tryptophan*, a number of attorneys split from their firm, taking a group of contingency fee cases with them. *Id.* In that case, this court adopted the approach whereby a number of objective and subjective factors were considered in dividing the client's award between the two law firms. *Id.* Specifically, among other factors, the court looked at:

(1) the length of time each firm spent on the case;

(2) the proportion of funds invested by each firm;

(3) the quality of representation;

(4) the result of each firm's efforts;

(5) the viability of the claim at transfer;

(6) the amount of recovery realized.

*See L-tryptophan*, 518 N.W.2d at 621.

In the present case, the district court stated:

[I]n view of the fact that this case was ultimately settled for $25,000, the Court believes that the request by the [appellant] for fees in excess of $20,000 is unreasonable and excessive.

[B]oth sets of plaintiff's attorneys contributed roughly equally to the final result. [Appellant] conducted the investigation and discovery of the case. [Respondent] handled the Alternative Dispute Resolution, the trial preparation, and the ultimate settlement of the case. Each firm benefitted from the contributions of the other firm. Thus, [appellant] should receive one half of the one-third fee as reasonable reimbursement based on quantum meruit of the work expended in this case.

Furthermore, it seems appropriate that the [appellant] should receive $1,379.79 for expenses since those expenses appear to be reasonably related to this case.

Thus the district court considered: (1) the time spent on the case; (2) the proportion of funds invested; (3) the result of each firm's efforts; and (4) the amount of recovery realized. We conclude that consideration of these factors was appropriate in this case and that the court did not improperly base its award solely on the terminated contract between Ashford and appellant.

## DECISION

The district court properly denied respondent's motion to discharge appellant's attorney's lien following appellant's justifiable withdrawal. We affirm the district court's determination as to the amount of appellant's attorney's lien.

**Affirmed.**

Mark T. Porter, Michael W. Unger, Hvass, Weisman & King, Chtd., Minneapolis, for appellant.

Michael O. Freeman, Hennepin County Atty., Michael J. Gallagher, Asst. County Atty., Minneapolis, for Hennepin County Welfare Bd.

Hubert H. Humphrey, III, Atty. Gen., William Hall Mondale, Asst. Atty. Gen., St. Paul, for Minnesota Dept. of Human Services.

Considered and decided by HUSPENI, P.J., and FORSBERG and DAVIES, JJ.