**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2225**

In Re Petition for Distribution of Attorney's Fees between
Stowman Law Firm, P.A., and Lori Peterson Law Firm,
formerly doing business as Lori Peterson and Associates.

**Filed November 3, 2014
Affirmed
Kirk, Judge**

Otter Tail County District Court
File No. 56-CV-12-167

David L. Stowman, Stowman Law Firm, P.A., Detroit Lakes, Minnesota (for appellant Stowman Law Firm, P.A.)

Zenas Baer, Zenas Baer Law Office, Hawley, Minnesota (for respondent Lori Peterson Law Firm)

Considered and decided by Kirk, Presiding Judge; Hudson, Judge; and Stauber, Judge.

**S Y L L A B U S**

A client's refusal to accept a settlement offer, on its own, is not a justifiable reason for an attorney to withdraw from representation in a contingent-fee case; thus, an attorney who withdraws solely for that reason is not entitled to recover attorney fees on the basis of quantum meruit.

## OPINION

**KIRK**, Judge

Appellant Stowman Law Firm, P.A., challenges the district court's denial of its petition for distribution of contingent attorney fees paid to respondent Lori Peterson Law Firm from a settlement that Lori Peterson Law Firm obtained for Stowman Law Firm's former client. Stowman Law Firm argues that the district court: (1) erred by determining that it was not entitled to quantum meruit recovery of a portion of the contingent fee because it did not establish a "good cause" basis for withdrawal from representation; (2) was bound at trial by the law cited in the order denying summary judgment; and (3) abused its discretion by denying its motion for a new trial. We affirm.

## FACTS

In July 2007, Stowman Law Firm entered into a contingent-fee agreement with C.D. to represent her in a medical-malpractice claim against her former physician. For over two years, attorney Jeffrey Stowman investigated and developed evidence to support a malpractice claim, but he did not file a complaint or conduct any formal discovery. Stowman incurred approximately $8,272.69 in out-of-pocket expenses while he developed the claim.

In December 2009, Stowman represented C.D. in mediation, but the parties did not reach an agreement. The next day, the mediator notified Stowman that C.D.'s former physician was willing to offer C.D. $100,000, provided that her acceptance of that amount would settle the claim. Stowman advised C.D. to accept the offer, but C.D. declined to do so. On January 4, 2010, Stowman notified C.D. that Stowman Law Firm

2

was withdrawing from her representation. In a letter to C.D. dated January 5, Stowman explained that he did not think he could obtain a better result than the $100,000 settlement offer if he continued to represent her.

In May 2010, Lori Peterson Law Firm assumed representation of C.D. After a second mediation, attorney Lori Peterson negotiated a settlement of $200,000, which included a 40% attorney fee. In February 2011, C.D., Peterson, and Stowman Law Firm signed a distribution agreement to place 40% of the settlement proceeds into Lori Peterson Law Firm's trust account until they resolved the dispute over the proceeds.

The parties did not resolve the dispute, and Stowman Law Firm petitioned the district court for distribution of the contingent fee in January 2012. Lori Peterson Law Firm moved for summary judgment. The district court denied the motion, finding that there were genuine issues of material fact.

In April 2013, the district court held a bifurcated court trial that was limited to the issue of whether Stowman Law Firm rightfully withdrew from representation of C.D. so as to maintain its claim for attorney fees. Following the trial, the district court determined that Stowman Law Firm "failed to establish a 'good cause' basis for withdrawal from representation to support a quantum [meruit] recovery of a portion of the contingent attorney fee received by [Lori Peterson Law Firm]." The district court awarded Stowman Law Firm $8,272.69 in expenses.

Stowman Law Firm moved for amended findings, judgment notwithstanding the findings and conclusions, or a new trial. After a hearing, the district court granted the motion for amended findings in part, but denied the other motions. This appeal follows.

3

**ISSUES**

I.      Did the district court err by determining that Stowman Law Firm was not entitled to quantum meruit recovery of a portion of the contingent fee?

II.     Was the district court bound at trial by the law cited in its order denying summary judgment?

III.    Did the district court abuse its discretion by denying Stowman Law Firm's motion for a new trial?

**ANALYSIS**

On appeal from judgment following a court trial, this court reviews whether the district court's findings were clearly erroneous and whether the district court erred as a matter of law. *Birch Publ'ns, Inc. v. RMZ of St. Cloud, Inc.*, 683 N.W.2d 869, 872 (Minn. App. 2004), *review denied* (Minn. Oct. 19, 2004). A finding is clearly erroneous if we are "left with the definite and firm conviction that a mistake has been made." *Minn. Pub. Interest Research Grp. v. White Bear Rod & Gun Club*, 257 N.W.2d 762, 783 (Minn. 1977). We review issues of law de novo. *Frost-Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

**I.    The district court did not err by determining that Stowman Law Firm was not entitled to quantum meruit recovery of a portion of the contingent fee.**

Stowman Law Firm argues that the district court erred by determining that it was not entitled to quantum meruit recovery of a portion of the contingent attorney fee for representing C.D. because it did not establish a "good cause" basis for its withdrawal of representation. In reaching that conclusion, the district court considered two Minnesota

4

cases. *See Ashford v. Interstate Trucking Corp. of Am.*, 524 N.W.2d 500 (Minn. App. 1994); *Stall v. First Nat'l Bank of Buhl*, 375 N.W.2d 841 (Minn. App. 1985). But because the district court determined that neither case was directly on point, it looked to several foreign cases for guidance. Relying on those foreign cases, the district court determined that Stowman Law Firm could not recover attorney fees on the basis of quantum meruit. On appeal, Stowman Law Firm argues that the district court erred by applying the standard of law outlined in the foreign cases rather than the standard required under Minnesota law.

### A. Minnesota caselaw.

In *Stall*, an attorney represented a bank in two collection matters on a contingent-fee basis. 375 N.W.2d at 843. The attorney had a dispute with the bank about his contingent fee in one of the matters. *Id.* at 843-44. Because of that dispute, the attorney decided that he could not continue to represent the bank in the other matter, and he submitted his bill to the bank on an hourly basis for that matter. *Id.* at 844. The attorney brought an action against the bank to recover the fees. *Id.* The district court found that the attorney was not entitled to any fees for either matter, in part because of the attorney's decision that he could not represent the bank in the second matter. *Id.* at 844-45.

On appeal, this court concluded that the attorney's withdrawal from representing the bank in the second case was not "unjustified," and thus he could maintain an action in quantum meruit. *Id.* at 846. In reaching that conclusion, this court stated that "[a]n attorney on a contingent fee arrangement who is discharged by his client is entitled to compensation for the reasonable value of his services, based on quantum meruit, not on

5

the contingent fee contract." *Id.* at 845. This court further stated that "[a]lthough no Minnesota case has decided the issue, the same rationale applies when the attorney rightfully withdraws from the representation." *Id.* at 846. This court cited two foreign cases in support of that statement: *Ambrose v. Detroit Edison Co.*, 237 N.W.2d 520 (Mich. Ct. App. 1975), and *In re Spellman*, 164 N.Y.S.2d 182 (N.Y. App. Div. 1957). *Id.*

In *Ambrose*, the Michigan Court of Appeals held that the district court properly imposed an attorney's lien because it concluded that the client's "total failure to cooperate" was "sufficient 'good cause' to allow an attorney to discontinue representing his client and to recover for his services." 237 N.W.2d at 522-23. The court of appeals stated that the client's "total failure to cooperate" included, among other things, "a total lack of communication" between the client and his attorneys, the client's refusal to elect payment options despite his attorneys' advice that he was legally obligated to do so, and the client's refusal "to accept a settlement offer, which embodied virtually all of the relief he demanded in his complaint, without stating coherent reasons for doing so." *Id.* at 523. In *Spellman*, which was an attorney disciplinary proceeding, the New York Supreme Court, Appellate Division, considered several incidents involving the attorney who was the subject of the proceeding. 164 N.Y.S.2d at 183-84. In one of the incidents, the court noted that the attorney could "have asserted a right to withdraw from the litigation because of a claimed lack of co-operation. In the event of such a withdrawal or in the event of abandonment of the action by his clients, he might then have asserted a right to compensation on the basis of quantum meruit." *Id.* at 184 (emphasis omitted).

6

In *Ashford*, the second Minnesota case that the district court discussed, a law firm withdrew from representing a client after repeated failed attempts to get the client to sign forms and warnings to the client that failure to sign would result in withdrawal. 524 N.W.2d at 502. The law firm filed an attorney's lien against the client. *Id.* The client hired another law firm to pursue her claim and moved to discharge the attorney's lien. *Id.* The district court denied the motion because it found that the first law firm "had justifiably withdrawn from representation, and therefore had the right to impose a lien." *Id.* After the client's claim settled, the district court held a hearing to determine the amount of the attorney's lien. *Id.* The district court awarded the first law firm its expenses and, based on the theory of quantum meruit, it awarded each firm half of the one-third contingency fee. *Id.*

On appeal, this court relied on *Stall*, stating that "[a]n attorney continues to be entitled to compensation for the reasonable value of his or her services after the attorney rightfully withdraws from representation." *Id.* This court concluded that evidence in the record supported the district court's finding that the law firm's withdrawal was justified and "the attorney-client relationship had broken down," but it did not discuss what the evidence in the record included. *Id.* This court concluded that the district court did not err by denying the client's motion to discharge the attorney's lien. *Id.*

Although *Stall* held that an attorney who is hired on a contingent-fee basis is entitled to recover attorney fees based on the theory of quantum meruit if he "rightfully" or "justifiably" withdraws from representation, 375 N.W.2d at 846, and *Ashford* followed that holding, neither case describes what constitutes "rightful" or "justifiable"

7

withdrawal. And there are no other Minnesota cases that elaborate on what constitutes "rightful" or "justifiable" withdrawal. Thus, it was not improper for the district court to look to foreign caselaw for guidance. *See Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn. 1984) (stating that foreign caselaw is not binding in Minnesota, but has persuasive value).

**B.      Foreign caselaw.**

In general, many courts throughout the United States have concluded that an attorney who withdraws from representation of a client in a contingent-fee case for a "justifiable" reason is entitled to compensation for services rendered. *See* George L. Blum, Annotation, *Circumstances Under Which Attorney Retains Right to Compensation Notwithstanding Voluntary Withdrawal From Case*, 53 A.L.R.5th 287, 303-04 (1997). But those courts have differed regarding what constitutes a "justifiable" reason based on each court's analysis of the facts and circumstances of each case. *See id.*; *see also Augustson v. Linea Aerea Nacional-Chile S.A.*, 76 F.3d 658, 663 (5th Cir. 1996) ("Whether just cause exists depends on the facts and circumstances of each case.").

In cases where an attorney alleges that withdrawal was due to the client's failure to cooperate, courts have examined the specific facts that allegedly establish a failure to cooperate before determining whether withdrawal was justified. *See Joseph Brenner Assocs., Inc. v. Starmaker Entm't, Inc.*, 82 F.3d 55, 57 (2d Cir. 1996) (concluding that attorney was no longer able to represent client effectively and request to withdraw was appropriate where client insisted on having son participate in the case over attorney's objections, client's son hired an attorney to represent his interests and client's attorney

refused to work with son's attorney, and client stopped paying attorney); *Ausler v. Ramsey*, 868 P.2d 877, 881-82 (Wash. Ct. App. 1994) (concluding that attorney was not pushed out of the case due to client's failure to cooperate when attorney alleged only one instance of client not replying to a letter and record demonstrated that attorney and client disagreed over value of suit and whether it should be arbitrated or tried).

Several courts have held that a complete breakdown of the attorney-client relationship justified an attorney's withdrawal. *See, e.g.*, *Leoris & Cohen, P.C. v. McNiece*, 589 N.E.2d 1060, 1064-65 (Ill. App. Ct. 1992) (reversing grant of summary judgment to the defendants and remanding for determination of whether the attorney-client relationship suffered a complete breakdown); *Ambrose*, 237 N.W.2d at 522-23 (concluding that evidence in the record supported the trial court's finding that the attorney had good cause to withdraw where the client exhibited a "total failure to cooperate").

In numerous other cases, courts have concluded that a client's failure to accept a settlement offer, on its own, did not justify an attorney's withdrawal. *See Augustson*, 76 F.3d at 663 ("Both parties agree, and the cases are in almost universal agreement, that failure of the client to accept a settlement offer does not constitute just cause for a withdrawing attorney to collect fees."); *Hardison v. Weinshel*, 450 F. Supp. 721, 722-23 (E.D. Wis. 1978) (concluding that attorney's withdrawal after client refused settlement offer was unjustifiable); *In re Estate of Falco*, 188 Cal. App. 3d 1004, 1018 (Cal. Ct. App. 1987) (concluding that because "[a] client's right to reject settlement is absolute," his or her "exercise of [that] right cannot constitute cause for the purpose of awarding

9

attorneys' fees"); *Ambrose*, 237 N.W.2d at 523-24 ("The refusal to settle by a client can never be sufficient grounds to constitute 'good cause' for an attorney to withdraw, but, as here, may be so irrational as to constitute one factor in evaluating his cooperation with his attorney." (emphasis omitted)); *Ausler*, 868 P.2d at 881 (stating that a client's refusal to settle does not justify an attorney's withdrawal from a contingency-fee case).

### C. Application to this case.

Stowman Law Firm argues that it had good cause to withdraw from C.D.'s representation because there was a complete breakdown of the attorney-client relationship. Stowman Law Firm argues that C.D. was a difficult client and did not follow Stowman's legal advice. Among other things, Stowman Law Firm claims she refused to settle or follow Stowman's negotiation recommendations. Stowman Law Firm further contends that the fact it withdrew from representation in accordance with the Minnesota Rules of Professional Conduct establishes that its withdrawal was rightful or justifiable.

The district court found that Stowman Law Firm withdrew from C.D.'s representation because of C.D.'s refusal to accept the $100,000 settlement offer and the firm's belief that it could not obtain a better recovery at trial. The district court concluded that Stowman Law Firm's withdrawal on that basis was not justified, and thus it could not recover under the theory of quantum meruit. The district court made several findings about the relationship between Stowman and C.D., including that C.D. "at times proved to be difficult," did not always understand legal and evidentiary issues, and struggled to accept Stowman's recommendations about the valuation of her claim. But

10

the district court also found that C.D. did not refuse Stowman's "reasonable and necessary requests" or demand that Stowman engage in improper or unethical behavior, and C.D. "had confidence in . . . Stowman's ability and his loyalty to her." The district court specifically rejected Stowman Law Firm's claims that its withdrawal was based on C.D.'s difficulty as a client and her insistence that Stowman Law Firm take unethical action because it found that the additional allegations were not supported by the evidence.

The record supports the district court's finding that Stowman Law Firm withdrew because C.D. refused to accept the settlement offer. In Stowman's withdrawal letter to C.D., he specifically stated that he was withdrawing from her representation because he did not believe he could obtain a better result than the $100,000 offer. Stowman testified at trial about difficulties in his relationship with C.D. during her representation, including that: they disagreed over the amount of damages C.D. would be willing to settle for; their relationship deteriorated during the representation; he did not feel that C.D. trusted him; and C.D. did not immediately produce her medical records when he asked her to do so.[1] But C.D. testified that Stowman told her he was withdrawing from representation because she was unwilling to settle the case. She also testified that she trusted Stowman and, at the time of the mediation, she believed that she and Stowman were in agreement about the amount of damages she was requesting. C.D.'s sister, who was present during many of C.D.'s meetings with Stowman, testified that she was satisfied with Stowman's representation of C.D. and C.D. and Stowman were in agreement about damages at the

---

[1] We also note that Stowman's counsel, who is also an attorney at Stowman Law Firm, notified the district court during the trial that C.D. had recently filed a complaint against him and Stowman with the Minnesota Lawyers Professional Responsibility Board.

11

time of mediation. And Stowman acknowledged during his testimony that his relationship with C.D. was always "cordial and polite." On this record, we cannot conclude that the district court's finding was clearly erroneous.

We recognize that it may be difficult for an attorney to set forth all of the reasons for his or her decision to withdraw from representation of a client in a withdrawal letter to the client. We particularly note the difficulty of ensuring a complete record of the reasons for withdrawal in a case like this one where the attorney cannot establish a record in district court for his withdrawal because a complaint was never filed. We therefore emphasize the importance of an attorney setting forth all of the reasons for withdrawal in his or her withdrawal letter to support entitlement to quantum meruit recovery. To do so, an attorney may need to be very candid in describing any issues with the client.

Because the district court's finding that Stowman Law Firm withdrew because C.D. rejected the settlement offer is not clearly erroneous, we conclude that Stowman Law Firm's reason for withdrawal was not justifiable and, thus, it is not entitled to receive attorney fees based on the theory of quantum meruit. We are persuaded by the numerous cases from foreign jurisdictions that provide that refusal to settle is not a justifiable ground for an attorney to withdraw from a contingency-fee case because it is generally the client's right to reject settlement. *See Augustson*, 76 F.3d at 663; *Hardison*, 450 F. Supp. at 722-23; *Falco*, 188 Cal. App. 3d at 1018; *Ambrose*, 237 N.W.2d at 523-24; *Ausler*, 868 P.2d at 881. This viewpoint is consistent with Minn. R. Prof. Conduct 1.2(a), which specifically provides that "[a] lawyer shall abide by a client's decision whether to settle a matter."

12

Further, even if the record supported Stowman Law Firm's claim that there were several other factors leading to its withdrawal from C.D.'s representation, we would conclude that those factors do not rise to the level of good cause to withdraw. As previously discussed, several foreign jurisdictions have concluded that a complete breakdown of the attorney-client relationship justified an attorney's withdrawal from a contingency-fee case. *See Ambrose*, 237 N.W.2d at 523; *Leoris & Cohen*, 589 N.E.2d at 1064-65. In fact, this court in *Stall* relied on *Ambrose*, in which the Michigan Court of Appeals concluded that the client's "total failure to cooperate" was "sufficient 'good cause' to allow an attorney to discontinue representing his client and to recover for his services." *Stall*, 375 N.W.2d at 846; *Ambrose*, 237 N.W.2d at 523. And, in *Ashford*, this court concluded that evidence in the record supported the district court's finding that "the attorney-client relationship had broken down." 524 N.W.2d at 502. Here, there is no evidence in the record that C.D.'s relationship with Stowman Law Firm had completely broken down.

Finally, we are unpersuaded by Stowman Law Firm's argument that its withdrawal is justified because it withdrew in accordance with the rules of professional conduct. This court held in *Ashford* that evidence in the record supported the district court's finding that the attorney's withdrawal was justified because he satisfied several paragraphs of Minn. R. Prof. Conduct 1.16(b), and because it was "clear that the attorney-client relationship had broken down." 524 N.W.2d at 502. But this court did not explain what specific conduct met those requirements and, importantly, this court

13

never stated that the attorney's withdrawal was justified *because* it met those requirements. *See id.*

*Augustson*, a Texas case decided by the Fifth Circuit, provides some guidance. *See* 76 F.3d at 663-65. In that case, the court rejected the law firm's argument that cause to withdraw with permission under Tex. Disciplinary R. Prof. Conduct 1.15 necessarily implies cause to receive compensation. *Id.* The court observed that the objectives of a hearing on cause to withdraw under the rules of professional conduct are different from the objectives of a hearing regarding attorney fees, and, therefore, there are circumstances where a court could allow an attorney to withdraw but not to recover a fee. *Id.* at 664. The language of the Texas rule at issue in *Augustson* and the Minnesota rule under which Stowman Law Firm withdrew are similar. Tex. Disciplinary R. Prof. Conduct 1.15(b)(1) provides that "a lawyer shall not withdraw from representing a client unless . . . withdrawal can be accomplished without material adverse effect on the interests of the client." Minn. R. Prof. Conduct 1.16(b)(1) provides that "a lawyer may withdraw from representing a client if . . . withdrawal can be accomplished without material adverse effect on the interests of the client." Because we are persuaded by the Fifth Circuit's reasoning in *Augustson*, we conclude that Stowman Law Firm is not entitled to attorney fees based on the theory of quantum meruit simply because its withdrawal was permissible under Minn. R. Prof. Conduct 1.16(b).

Clearly, the Stowman Law Firm invested a significant amount of time and effort in developing C.D.'s claim, and we acknowledge that the result is likely inequitable. We again emphasize that when withdrawing from representation in a contingent-fee case, an

14

attorney must make a record with the court or in writing to the client that clearly sets forth the reasons for withdrawal. We are bound by the district court's finding that Stowman Law Firm withdrew from C.D.'s representation due to C.D.'s refusal to accept the settlement offer because it is not clearly erroneous, and we find no error in the district court's application of the law. Accordingly, we conclude that the district court did not err by determining that Stowman Law Firm was not entitled to quantum meruit recovery of a portion of the contingent fee.

## II. The district court was not bound at trial by the law cited in its order denying summary judgment.

Stowman Law Firm argues that the district court erred by failing to follow the law it set forth in a pretrial order. Under Minn. R. Civ. P. 16.05, "[a]fter any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action and shall be modified only to prevent manifest injustice." Minn. R. Civ. P. 16.03 describes the subjects that the parties may address at the pretrial conference, including "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses," "the control and scheduling of discovery," "settlement," and "the disposition of pending motions."

Stowman Law Firm first argues that the district court erred by sua sponte changing the standard of law which it applied to determine whether Stowman Law Firm's withdrawal was justified. We disagree. The district court issued the pretrial order that Stowman Law Firm references following a hearing addressing the motions that the parties raised prior to the trial, including Lori Peterson Law Firm's motion for summary

15

judgment and Stowman Law Firm's motions in limine. In the order, the district court denied Lori Peterson Law Firm's motion for summary judgment because it determined that there were genuine issues of material fact for trial. The district court first found that there was a genuine issue of material fact as to whether Stowman Law Firm rightfully withdrew from representing C.D. In reaching that decision, the district court considered this court's decision in *Ashford*. The district court also found that, even if Stowman Law Firm did not rightfully withdraw from representation, a genuine issue of material fact existed as to whether the distribution agreement that C.D., Peterson, and Stowman Law Firm entered into constituted an acceptance of rightful withdrawal. Finally, the district court determined that, if Stowman Law Firm was entitled to quantum meruit recovery of attorney fees, there would be a genuine issue of material fact regarding how much it was entitled to recover. The district court's order makes clear that it was addressing the motions it had before it, not setting forth the standard of law to be applied at the trial.

Stowman Law Firm also argues that the district court erred when it reversed its pretrial ruling that the distribution agreement that C.D., Peterson, and Stowman Law Firm signed was unambiguous. In its order denying summary judgment, the district court stated that "the language of the distribution agreement is ambiguous and the terms of which are genuine issues of material fact that are appropriate for determination at trial." In its order following the trial, the district court found that the agreement that C.D., Peterson, and Stowman Law Firm signed "contains no acknowledgement or concession by Lori Peterson that the Stowman Law Firm, P.A. is entitled to any fee, nor does it contain a waiver of fee by Jeffrey Stowman." The district court further found that "[t]he

16

agreement clearly provides that the issue of entitlement to attorney's fees between [Stowman Law Firm] and [Lori Peterson Law Firm] is reserved. In that regard the agreement is unambiguous."

In its order denying summary judgment, the district court considered only whether there were genuine issues of material fact for trial. The district court did not make any final conclusions about the distribution agreement or any findings of fact. Instead, the district court simply determined that the case should be set for trial. The district court did not err by reaching a different conclusion about the distribution agreement after hearing testimony and reviewing all of the evidence in the record.

## III. The district court did not abuse its discretion by denying Stowman Law Firm's motion for a new trial.

The district court may grant a new trial based on "[m]aterial evidence newly discovered, which with reasonable diligence could not have been found and produced at the trial." Minn. R. Civ. P. 59.01. "The decision to grant a new trial generally lies within the sound discretion of the district court and will not be disturbed absent a clear abuse of that discretion." *Dostal v. Curran*, 679 N.W.2d 192, 194 (Minn. App. 2004), *review denied* (Minn. July 20, 2004). If the district court decides a motion for a new trial because of an error of law, this court applies a de novo standard of review. *Id.*

Stowman Law Firm argues that the district court abused its discretion by denying its motion for a new trial based on newly discovered material. It contends that it did not learn of the existence of the written settlement agreement until after trial, and the

17

agreement could not have been found earlier because Lori Peterson Law Firm did not produce it.

The district court denied Stowman Law Firm's motion for a new trial, stating that it had "no reason to believe that the actual written settlement entered between the client and the doctor is of relevance to the allocation of attorney fees." The district court also found that Stowman Law Firm should have known it existed and that the agreement could have been subject to discovery or a motion to compel discovery.

It is unclear how the written settlement agreement is relevant to whether or not Stowman Law Firm is entitled to recover attorney fees based on the theory of quantum meruit. The issues in this case focus on the events that led to Stowman Law Firm's decision to withdraw from C.D.'s representation, and the settlement in this case was not reached until several months after Stowman Law Firm withdrew from representation. Moreover, it is uncontested that Stowman Law Firm knew that C.D. reached a settlement with her former physician, and therefore it could have discovered with reasonable diligence that the parties signed a written settlement agreement. Therefore, we conclude that the district court did not abuse its discretion by denying Stowman Law Firm's motion for a new trial.

## DECISION

Because we conclude that the district court did not err by determining that Stowman Law Firm was not entitled to quantum meruit recovery of a portion of the contingent fee, was not bound at trial by the law cited in its order denying summary

18

judgment, and did not abuse its discretion by denying Stowman Law Firm's motion for a new trial, we affirm the judgment.

**Affirmed.**