CARLO MATARRESE, Plaintiff, *v.* GEORGE W. WILSON, JR., et al., Defendants. In the Matter of DAVID B. WILLIAMS, Petitioner.

Supreme Court, Special Term, Bronx County, November 20, 1952.

*David B. Williams,* petitioner in person.

*Carlo Matarrese,* in person, and *Jack Dorman* for plaintiff.

MATTHEW M. LEVY, J. This is an application by an attorney for a plaintiff in a personal injury action for leave to withdraw as such attorney and for an order fixing his fees and enforcing his lien. Permission for withdrawal was granted by me and disposition of the remainder of the application was held in abeyance pending the report of an Official Referee, to whom was referred the taking of testimony as to the services rendered and their value and the extent of the lien, and the making of his recommendation with respect thereto. The learned Referee suggested an allowance to the petitioner of $350 to cover both fees and disbursements (the undisputed amount of the latter was $53.65). The matter is again before me on the petitioner's motion to disaffirm. I regret that I must state that I do not altogether agree with the recommendation or the basis for it. Such view on my part certainly justifies, if indeed it does not compel, a statement of the facts in this matter as disclosed by the record. These facts are not in substantial dispute.

The plaintiff was injured when he, a pedestrian, walked into or was run over by defendants' automobile. The plaintiff retained the petitioner to represent him. While not a specialist in negligence cases, the petitioner was found by the Referee to be a lawyer of good reputation and of more than thirty years' standing at the bar. A 25% contingent fee agreement was signed. The petitioner promptly made the necessary investigations, obtained the appropriate information and documentary data, prepared the required legal documents (such as summons, complaint, bill of particulars, etc.), placed the cause upon the jury calendar for trial, and moved for and procured the normal preference in such cases. Unfortunately, because of calendar congestion, some three years would be expected to expire before actual trial. In the meanwhile the petitioner made inquiry as to the financial responsibility of the defendants and learned that their accident indemnity coverage was only $5,000 and that they were otherwise comparatively impecunious. He discussed settlement with the defendants' attorneys in the action, who, as usual, were selected as such attorneys by the insurance carrier. After extended negotiations, the defendants finally offered to settle for $4,500. The injuries sustained by the plaintiff were serious, however, and would probably warrant a greater verdict. But liability for the accident was not conceded by the defendants; on the contrary, it was disputed, and there seemed to be no available witness for the plaintiff other than himself.

The petitioner, in good faith and with understandable professional judgment in the premises, acquainted his client with the facts thus ascertained, and recommended acceptance of the settlement. The plaintiff was, of course, disappointed, and refused the offer. In due course, the cause reached the pretrial conference stage. The Justice of this court there presiding sought to persuade the insurance carrier to pay $4,750 in settlement, which sum it seems the plaintiff was then prepared to accept. The indemnity company flatly refused to pay any more than the $4,500, which settlement the plaintiff again rejected. The cause was then remanded, with preference maintained, to await its regular turn upon the trial calendar.

The upshot of the situation was that the client became angry and abusive. He belittled the petitioner's capabilities as a lawyer, and told him that the only reason the settlement was recommended by the petitioner was that he, the attorney, " needed money very badly ". In the language of the report of the learned Referee, " The result of petitioner's effort incensed plaintiff and he made the charge of ' sell-out ' against petitioner." Thereupon, the petitioner wrote the plaintiff that " I do not care to further act as your attorney in this case, in view of your failure to accept my advice and in view of the loss of respect and confidence which you have exhibited in your dealings with me." The offer to withdraw was accepted by the plaintiff.

The client originally refused his attorney any compensation. At the hearing before the Referee, there was indicated a grudging willingness to pay the petitioner $150 to cover services and disbursements. The learned Referee recommended to me that the attorney receive an allowance of $350, thus limiting the petitioner's actual compensation to somewhat less than $300. While maintaining that " an attorney who voluntarily withdraws from a negligence case is entitled to no compensation whatsoever " the client is willing to abide by the figure set by the Referee. The latter's suggestion as to the value of the services was made because, as he stated in his report, only the preliminaries were accomplished and because the petitioner " withdrew " and was not " discharged ". As much, I gather, because of a sense of honor and of principle as a matter of economics, the attorney moves to disaffirm.

Insofar as the learned Referee rested his recommendation on the precise formalistic nicety as to whether there was here a " discharge " or a " withdrawal " — an anticipatory breach by

the client or impermissible abandonment by the lawyer — I fear that he fell into error. For myself, I should rather be inclined to say that an attorney may deem himself as effectively discharged by being falsely accused of a breach of his trust as if he were bluntly dismissed without cause. The relationship of a lawyer to his client very properly demands the highest type of professional integrity and service, and at times even personal selflessness. But that relationship is not entirely a one-way street. Reciprocally, it envisages at the least the client's confidence in and respect for his attorney. Wholesome regard for one's lawyer is, I feel, as much a part of the contract of retainer — though unwritten — as the signed agreement to pay a fee for services to be rendered. The practice of law is not only a business but also a profession, and it is high time that the public as well as the Bar are made aware of the distinction. For only as the relationship of attorney and client is kept on its lofty traditional plane will the public continue to reap the valued benefits of an able and devoted legal profession, and will the Bar be able to continue to receive both needed pecuniary sustenance and spiritual satisfaction from its pursuit. No honorable member of the Bar — sensitive to the esteem which a great, noble and learned profession deserves — could, under circumstances such as these, have continued to maintain the relationship of attorney and counsellor to this client. The petitioner here did not willfully abandon his retainer. He was not a willing emigre from its service, but rather a saddened refugee.

Quite rightly and without subjecting himself to liability for breach of contract a client may discharge his lawyer, even without cause or reason (*Matter of Krooks,* 257 N. Y. 329, 331) — a rule based upon the very essence of the confidential relationship. But where the discharge is unwarranted, the attorney is entitled to compensation. (*Crowley* v. *Wolf,* 281 N. Y. 59, 65.) And I am of the view that where an attorney justifiably withdraws from his engagement, the same result follows. If the attorney recommends a course of conduct, the client may refuse to abide by the advice thus given — however sensible the recommendation or reasonable the course. But it does not follow that he can thereupon charge the lawyer with professional turpitude, and, when the lawyer takes proper umbrage, refuse him compensation upon the ground that the lawyer had been merely traduced and not discharged.

The attorney is of course not entitled to be paid on the assumption of the consummation of the settlement or on the

basis that the suit should or could have been settled. The cause of action is the client's. If his purpose is not to cheat his attorney, he may, completely unfettered by any agreement with or relationship to the attorney, litigate or settle as he wills or whims (*Matter of Levy,* 249 N. Y. 168). On the other hand, the attorney, in a measure, continues to be bound by the contract of retainer. His fees (being by agreement contingent upon such " sums received or recovered by me [the client] by suit, settlement or otherwise ") cannot be computed on the agreed percentage of that sum which the client might have received by way of settlement had the lawyer's advice been accepted (*Martucci* v. *Brooklyn Children's Aid Soc.,* 284 N. Y. 408). Nevertheless, one of the factors properly to be considered in evaluating an attorney's services under a dissolved contingent-fee agreement is the amount which the client might ultimately recover (*Matter of Tillman,* 259 N. Y. 133).

With this in mind, and taking into account all elements of services rendered, the petitioner is allowed compensation in the sum of $700 inclusive of disbursements, on a *quantum meruit* basis (*Matter of Weitling,* 266 N. Y. 184, 186). The motion to disaffirm the Referee's report is granted to the extent of modifying it accordingly. The petitioner is to have a first lien on any moneys recovered by way of settlement or trial of the action. Neither of the contending parties expressed a desire to postpone until the conclusion of the litigation the matter of the fixation of the amount of the attorney's lien for fees (*Buckley* v. *Surface Transp. Corp.,* 277 App. Div. 224), and this course does not seem warranted under the facts in the present case. In accordance with the procedure outlined in *Goldman* v. *Rafel Estates* (269 App. Div. 647) the plaintiff should file an undertaking as a condition for obtaining possession of the papers or in lieu thereof he may pay the petitioner the allowed sum in cash. The exhibits in evidence may be returned to the petitioner by the clerk.

Settle order.