[No. 30504-2-I.   Division One.   March 7, 1994.]

VALARIA AUSLER, *Appellant*, v. BONNIE RAMSEY, ET AL, *Defendants*, LEN BLUMENTHAL, *Respondent*.

SCHOLFIELD, J., concurs in the result only.

*A. Graham Greenlee,* for appellant.

*George C. Allen,* for respondent.

KENNEDY, J. — Valaria Ausler appeals the trial court's order denying reconsideration of an earlier order granting Len Blumenthal an attorney fee based on quantum meruit.[1] Ausler hired Blumenthal to pursue a personal injury suit

---

[1]Translated from Latin, quantum meruit means "as much as he deserves". It describes the extent of liability on a contract implied by law, and is based on the premise that one who uses and enjoys the labor and materials of another should not be unjustly enriched thereby. Thus, the law implies a promise to pay a reasonable amount for the labor and materials absent an express promise to do so. Black's Law Dictionary 1119 (5th ed. 1979).

against Ramsey. Blumenthal withdrew from the representation before going to trial or obtaining a settlement offer satisfactory to Ausler. Ausler hired new counsel to pursue the action. The new attorney achieved a settlement satisfactory to Ausler. The trial court awarded Blumenthal a fee, based on quantum meruit, for work he performed on the suit before withdrawing. Finding that the trial court erred in awarding Blumenthal a fee, since Blumenthal did not establish that he had "good cause" to withdraw within the meaning of the applicable rule, we reverse and remand.

## FACTS

On September 27, 1984, Ausler and Ramsey were involved in a motor vehicle collision. Ausler retained Len Blumenthal on October 1, 1984, to represent her in a personal injury suit against Ramsey. Ausler and Blumenthal entered into this simple contingent fee arrangement:

> The undersigned client, _____, agrees that said attorney shall receive one-third ($1/3$) of any monies recovered on client's behalf in connection with this accident. No fee shall be charged if there is no recovery.

Clerk's Papers, at 72. The contract also required Ausler to pay costs advanced by Blumenthal.

On June 25, 1987, Blumenthal sought $25,000 from Ramsey's insurer in settlement of the suit. Sometime around July 24, 1987, the insurer tendered a final counteroffer of $11,000. Despite Blumenthal's recommendation, Ausler did not accept this offer, and Blumenthal filed suit on September 8, 1987. Ausler was deposed by Ramsey and answered Ramsey's interrogatories in October of 1987.

On January 29, 1988, Blumenthal asked Ausler, by letter, to reply in writing as to whether she wanted the case to be submitted to arbitration. She did not do so. Three months later, in April of 1988, Blumenthal discussed arbitration with Ausler, and advised her that he felt arbitration would be unsuccessful at achieving what Ausler thought was the value of the suit.

Blumenthal withdrew from the case on May 6, 1988. Blumenthal asserts that he withdrew because he believed that Ausler was not heeding his best legal advice, was acting in contradiction to her best interests and because she failed to respond in writing to his letter of January 29, 1988. On May 12, 1988, Blumenthal filed an attorney's lien, pursuant to RCW 60.40.010, on any judgment received by Ausler.

Ausler then hired A. Graham Greenlee to represent her in the personal injury suit. He directed Ausler to undergo additional medical examinations. He determined the coverage limits of Ramsey's insurance policy. He also deposed Ramsey. The case was set for arbitration. By his additional work, Greenlee was able to increase the insurance company's settlement offer to $16,000 as of December 24, 1991, and to $17,500 by December 27, 1991. As the arbitration date approached, the insurer increased its offer to $20,000. Just before arbitration the insurer offered to pay the full policy limits, $25,000. Ausler accepted this offer.

Ausler then moved to determine Blumenthal's lien, arguing that his recompense should be limited to costs advanced. Blumenthal asked for a lien of $4,037.72. This represented $517.72 in costs and $3,520 in fees (35.2 hours x $100/hour).

The trial judge held a hearing on the motion and entered an order establishing Blumenthal's lien at the full amount sought, $4,037.72. The trial judge ordered that this money be paid directly to Blumenthal by the insurer. Ausler moved for reconsideration. This motion was denied 1 week later. On April 9, 1992, Blumenthal filed a satisfaction of lien, having been paid by the insurer. This timely appeal followed.

## DISCUSSION

The determination of attorney fees is a matter left to the discretion of the trial judge. *Wheeler v. Catholic Archdiocese*, 65 Wn. App. 552, 574, 829 P.2d 196, *review granted*, 120 Wn.2d 1011 (1992). Discretion is abused when it results in a decision that is manifestly unreasonable, or is exercised based on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775

(1971). A decision based on a misapplication of law rests on untenable grounds. *In re Marriage of Bralley*, 70 Wn. App. 646, 651, 855 P.2d 1174 (1993) (a trial court abuses its discretion if its decision is "in violation of law").

It is undisputed that Blumenthal voluntarily withdrew from Ausler's representation. Ausler argues that, in doing so, Blumenthal waived any claim to fees. Blumenthal responds by arguing that *Ross v. Scannell*, 97 Wn.2d 598, 647 P.2d 1004 (1982) governs the action and entitles him to a quantum meruit recovery.

Blumenthal's reliance on *Ross v. Scannell, supra*, is misplaced. In *Ross*, an attorney and his client became embroiled in a fee dispute concerning previous representation. As a result, the attorney did not complete representation in a second matter for the same client. The client was to pay a contingent fee for these services. *Ross*, 97 Wn.2d at 608. The court considered whether an attorney who stopped providing legal services could recover based on a contingent fee contract "prior to full consideration of the contingency". *Ross*, 97 Wn.2d at 608.

The court held that, "under the circumstances of this case an attorney may not recover on the contract but must seek recovery of fees on the theory of quantum meruit." *Ross*, 97 Wn.2d at 608. That holding does not establish that any attorney who withdraws from a contingent fee representation may always recover fees in quantum meruit. Rather, it establishes that the *measure* of recovery[2] should be quantum meruit, as opposed to some portion of the contingent contract. The court concluded, "*if* Ross is entitled to attorney fees, the measure of those fees is not the contingent fee agreed upon but the reasonable value of the services rendered." (Italics ours.) *Ross*, 97 Wn.2d at 609. We must determine whether or not Blumenthal is entitled to fees.[3]

---

[2]The original rule from *Ramey v. Graves*, 112 Wash. 88, 191 P. 801 (1920) used the term "measure of damages".

[3]The *Ross* court was unconcerned with whether Ross or Scannell terminated the attorney-client relationship. This makes sense in light of the limited holding of that case. As seen *infra*, however, why Blumenthal terminated the relationship determines whether he is entitled to fees.

The Washington Supreme Court has had occasion to examine a case somewhat similar to the instant case once before. In *Farwell v. Coleman*, 35 Wash. 308, 77 P. 379 (1904) attorney Farwell represented Coleman in an action whereby the railroad was attempting to condemn portions of her land to create an easement. Farwell agreed to take the case on a contingent fee basis. *Farwell*, 35 Wash. at 311.

Thereafter Farwell did almost nothing to prosecute the case. Coleman eventually settled with the railroad herself, without Farwell's knowledge. Farwell sought fees for what work he had performed. The trial court denied Farwell's request, finding that he had withdrawn from the case as a result of his neglect. *Farwell*, 35 Wash. at 312. The Washington Supreme Court affirmed, agreeing that Farwell had severed the attorney-client relationship through his inattention to the case. *Farwell*, 35 Wash. at 315.

■ *Farwell* accords with the modern majority rule, which examines the reasons that an attorney-client relationship has been terminated in deciding whether an attorney hired on a contingent fee basis may nonetheless recover fees for work already performed. This general rule states that, when an attorney withdraws from a case, if the withdrawal was for "good cause" or was "justified", then the attorney may recover based on quantum meruit. *See* Wade R. Habeeb, Annotation, *Circumstances Under Which Attorney Retains Right to Compensation Notwithstanding Voluntary Withdrawal From Case*, 88 A.L.R.3d 246, §§ 2-5 (1993); 7 Am. Jur. 2d *Attorneys at Law* §§ 262-266 (1980).[4]

---

[4]Courts have found "good cause" where the attorney knows that the client's claim is fraudulent, the attorney has professional objections to the client's retention of additional counsel, the client is uncooperative, the attorney and client suffer a "breakdown" in communication, the client degrades the attorney (usually by claiming the attorney was dishonest), the client refuses to pay justified attorney fees and costs or ethical rules require the attorney to withdraw. 88 A.L.R.3d at 255-56; *see generally* T. Gammon, *Attorney Fees: Another Light Shines Through*, 48 J. Mo. B. 415 (1992).

It has been held unjustifiable for an attorney to withdraw from a case because the client has retained other counsel, the attorney does not believe the negotiated contract with the client is sufficiently compensatory, the attorney feels that the case has no potential or the client refuses to accept a settlement offer. 88 A.L.R.3d at 252-54.

We explicitly adopt this general rule. In so doing, we find the California case of *Estate of Falco*, 188 Cal. App. 3d 1004, 233 Cal. Rptr. 807 (1987) persuasive. In *Falco*, an attorney was retained by four sisters to conduct a will contest. After investigating the suit the attorney felt it had little merit and urged his clients to take a settlement offer. The attorney sent a letter saying he would withdraw if the clients did not accept the offer because he could not work with them any longer.[5] *Falco*, at 1009.

In California, ethical considerations required an attorney to withdraw from a case when he or she had "lost faith in the claim". Noting this, the court said,

> an attorney employed on a contingency fee basis may not "determine that it is not worth his time to pursue the matter, instruct his client to look elsewhere for legal assistance, but hedge his bet by claiming a part of the recovery if a settlement is made or a judgment obtained . . .."

*Falco*, at 1015-16 (quoting *Hensel v. Cohen*, 155 Cal. App. 3d 563, 202 Cal. Rptr. 85 (1984)). The *Falco* court, recognizing that California follows the general rule stated above, held that the client's refusal to settle could not justify an attorney's withdrawal from a contingency fee representation. *Falco*, at 1018. We mirror the *Falco* court's displeasure with an interpretation of the rule that would allow attorneys to "hedge their bets".

Contingent fee arrangements serve an important function. Many injured persons do not have the means to hire an attorney. If these people were required to pay attorney fees at an hourly rate, regardless of winning or losing, they would simply forgo pursuing legal action for fear that if they lost it would ruin them. Also, many attorneys would be

---

[5]The letter included this passage:

"Finally, please understand that my position is unequivocal and cannot be changed by discussing irrelevant issues with you and listening to each of you tell me how much John Falco cared for and loved each of you."

*Falco*, at 1009.

The trial court's finding that the attorney had not withdrawn because of the breakdown in the relationship was affirmed as within the trial court's discretion. *Falco*, at 1019-20.

unwilling to invest much time for a client who might not be able to pay. As a result, the legal system would systematically undercompensate poorer people while still compensating wealthier victims. In the typical contingent fee arrangement, attorneys in effect insure their clients and themselves against the cost of losing by covering those losses with higher-than-normal fees in winning cases. To that end, the percentages used by contingent fee contract attorneys, whether established by custom or even regulated by statute, are designed to reflect the risk of failure in a given case, as well as the overall risks in the attorney's general practice. Thus, some attorneys require a higher percentage of the recovery to be paid as fees when the case goes to trial or is appealed.

Contingent fees also have drawbacks for both the attorney and the client. The victorious client's compensation will be diminished by the attorney's higher-than-normal fee. The attorney risks a minimal recovery, or no recovery at all. This may occur because a client wants to go to trial or appeal a case that the attorney has come to believe will be unsuccessful.

Clients often must accept the drawbacks of a contingent fee arrangement if they want to acquire an attorney at all. Attorneys must do the same. Therefore, an attorney should not be permitted to withdraw from a "bad case" on grounds that the client "uncooperatively" wishes to go to trial, thereby eliminating his or her exposure to risk, and still recover fees for that case.[6]

Blumenthal contends that he withdrew because Ausler refused to cooperate. He indicates only one instance where

---

[6]We also question whether an attorney's normal hourly rate should always be the touchstone of quantum meruit. Here, Blumenthal asked for 32.5 hours at his normal rate of $100 per hour. Quantum meruit, however, means "as much as he deserves". We see no invariably necessary connection between an attorney's normal hourly rate and the fee he (or she) deserves in any one contingency fee case. To the contrary, allowing the normal hourly fee, a fee usually obtained for completed legal work, would again allow the attorney in part to "hedge his bet" or "have her cake and eat it too". If he or she were to withdraw from the case, the quantum meruit fee would still cover all of the time spent on the case.

Ausler did not reply in writing to a letter he sent her concerning arbitration of the personal injury matter. This alone is insufficient to establish that his withdrawal was justified. This is particularly so since the record indicates that Ausler responded verbally and the two eventually discussed submitting the claim to arbitration. Blumenthal cites RPC 1.9(b), claiming that he could not ethically disclose other, more damning evidence of Ausler's lack of cooperation.[7] However, RPC 1.6 allows an attorney to disclose client confidences in actions between the client and the attorney.[8] Therefore, Blumenthal could ethically have produced any evidence which established his claim against Ausler.

The record shows that Ausler and Blumenthal disagreed both over the value of the suit and as to whether it should be arbitrated or tried. RPC 1.2(a) states that an attorney "shall abide" by the client's decision whether to accept a settlement offer. Compare *Falco*, at 1018. Blumenthal was not forced out of the case by Ausler's recalcitrance. He was not constructively fired. Rather, without sufficient justification shown in this record, he voluntarily withdrew before the contingency was realized. On these facts Blumenthal waived his fee.[9]

---

[7]RPC 1.9(b) states:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

". . . .

"(b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit."

[8]RPC 1.6 provides:

"(b) A lawyer may reveal such confidences or secrets to the extent the lawyer reasonably believes necessary:

". . . .

"(2) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client[.]"

[9]An attorney-client relationship necessarily requires a high degree of trust, and so can deteriorate to the point where the attorney's withdrawal would be justified. *See Ambrose v. Detroit Edison Co.*, 65 Mich. App. 484, 237 N.W.2d 520 (1975) (client's total failure to cooperate merits attorney's withdrawal); *Matarrese v. Wilson*, 202 Misc. 994, 118 N.Y.S.2d 5 (Supp. 1952) (client's belittling of attorney and accusation that attorney urged acceptance of settlement offer

240 

We reverse. Blumenthal having been paid $4,037.72, he should repay Ausler $3,520, for a net recovery to Blumenthal of $517.72 for his costs advanced. We remand for entry of an offsetting judgment against Blumenthal and in favor of Ausler for $3,520. Ausler's appeal not being frivolous, Blumenthal's request for an award of attorney fees for a frivolous appeal is denied.

COLEMAN, J., concurs.

SCHOLFIELD, J., concurs in the result.

because attorney "needed money badly" was sufficient cause for withdrawal); *A Sealed Case*, 890 F.2d 15 (7th Cir. 1989) (attorney permitted to withdraw on well-founded belief that client would commit perjury).