IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-20626

_____


CLYDE W. AUGUSTSON, Individually
and as Parents of and sole heirs of
Hildegard D. Augustson, Deceased, ET AL.,

                              Plaintiffs-Appellants,

                    versus

LINEA AEREA NACIONAL-CHILE S A
(LAN-CHILE),

                              Defendant,

and

SPEISER, KRAUSE, MADOL and MENDELSOHN,

                              Appellee.

_____

Appeal from the United States District Court for
the Southern District Of Texas
_____


February  29, 1996

Before REAVLEY, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:

A Texas lawyer has been awarded compensation from his former
client although the lawyer ceased to participate in the lawsuit
prior to its resolution.  Because he chose to withdraw due to
disagreement with the client over the extent of discovery and
settlement value, we reverse and render judgment denying
compensation to the lawyer.

I.

On February 20, 1991, Susan Augustson and her grown daughter, Hildegard, flew as passengers from Punta Arenas, Chile, to Puerto Williams, Chile, on a flight operated by Linea Aerea Nacional-Chile, S.A. ("LAN-Chile"). The pilots made a high speed approach at a low angle and the airplane failed to stop at the end of a wet, downward sloping runway. The plane traveled down an embankment and plunged 150 yards into the frigid waters of Beagle Channel. Both Susan and Hildegard survived the initial crash into the water, but Susan was unable to extricate her daughter from her seat. Susan received no help from the flight crew, who had abandoned the airplane, and was forced to watch her daughter drown, narrowly escaping herself by swimming out the back door of the airplane.

On October 22, 1991, Susan and her husband, Clyde Augustson, appellants in this action, signed a contingent fee contract in San Antonio, Texas, with Speiser, Krause, Madole & Mendelsohn, Mata ("Speiser Krause"), to represent them in their claims against LAN-Chile for Hildegard's death. Under the contract,[1]

---

[1] The relevant portions of the contract read as follows:

* * *

2. You [Speiser Krause] are to have the exclusive right to take all legal steps which you deem necessary to enforce said claims. You are not to settle these claims without the consent of the undersigned [the Augustsons], and the undersigned is not to settle these claims without your written consent.

3. You are to take all steps which you deem necessary for the proper investigation, preparation and trial of any

3

Speiser Krause agreed to investigate the facts and prepare for trial. The contract also gave the Augustsons the right to make the final decision on settlement of their claims. On March 2, 1992, Susan Augustson retained Speiser Krause to prosecute her action for her own personal injuries. Speiser Krause also represented ten other clients with claims arising from the accident.

Speiser Krause undertook some investigation of the crash, incurring expenses of $12,774.39 to obtain documents, interview survivors and other crash observers, research the ticketing, and

<div style="margin-left: 2em;">

actions filed in connection with these claims, and you are to handle any necessary trials, appeals, and re-trials thereof.

* * *

5.    You are to handle these claims on a contingent fee basis, so that if there is no recovery or settlement, there will be no legal fees payable by the undersigned to you.

6.    In consideration of the services rendered and to be rendered by you, the undersigned hereby agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of the above claims, as your contingent legal fee, a sum equal to:

Twenty-five percent (25%) of the lump sum recovered and of the present value of future payments in the event of a structured settlement, whenever recovered by suit, settlement or otherwise. . . .

7.    You are to advance for the account of the undersigned all out-of-pocket expenses which you deem necessary for the prosecution of these claims, subject to reimbursement by the undersigned at the time of settlement or conclusion of litigation; Provided, However, that you are to apportion the common litigation expenses equally among all cases in which you are retained arising out of this accident.

</div>

4

research the LAN-Chile operation.  Charles F. Krause, drawing on thirty years of experience in aviation, concluded that LAN-Chile had been negligent.  However, because of the Warsaw Convention[2] governing international air travel, unless the plaintiffs could prove willful misconduct on the part of the airline, the claims would be limited to $75,000 each.  Speiser Krause believed that even if it could convince a jury of willful misconduct, such a verdict stood a good chance of being overturned on appeal.

With this in mind, Speiser Krause undertook to negotiate with LAN-Chile, and elicited separate settlement offers for all 12 claims.  The settlement offer for the Augustsons was $475,000, well above the $150,000 limit established by the Warsaw Convention for negligence claims.  All clients except the Augustsons accepted the settlement offers negotiated by Speiser Krause.

Speiser Krause strongly recommended that the Augustsons accept the settlement offer, believing that further discovery would enhance LAN-Chile's position by revealing negligence but not willful misconduct.  When the Augustson's refused the offer, Speiser Krause pressured them to give a final figure on which they would agree to settle.  The Augustsons refused to settle or give a final figure, believing that they had insufficient information on which to base a determination of the value of their claims.

---

[2]49 Stat. 3000 (1934), T.S. No. 876, reprinted in 49 U.S.C. § 1502 note (1976).

Because of the Augustsons persistence, Speiser Krause filed suit on their behalf against LAN-Chile on February 18, 1993, immediately before the statute of limitations was to expire. On March 12, 1993, at Speiser Krause's request, a mediation was conducted before two former judges. The judges proposed to the Augustsons that they ask LAN-Chile for $625,000 to settle the case. The Augustsons refused that suggestion, still believing that they had insufficient information on which to make a proper settlement decision.

On June 1, 1993, Speiser Krause moved for voluntary withdrawal for good cause pursuant to Rule 1.15(b) of the Texas Disciplinary Rules of Professional Conduct.[3] The Augustsons opposed withdrawal in writing. After a hearing, the district court permitted Speiser Krause to withdraw, deferring until later a hearing on the reasonableness of Speiser Krause's attorney's lien and expenses. At the time of withdrawal, Speiser Krause had

---

[3]Rule 1.15(b) permits a lawyer to withdraw from representation in certain circumstances. *See* Tex. Disciplinary R. Prof. Conduct 1.15(b) (1991) and Comments 7, 8, reprinted in Tex. Gov't Code Ann. tit. 2, subtit. G, app. A (Vernon Supp. 1995) (State Bar Rules art. 10, § 9). Under Rule 1.15(b)(1), the lawyer has the option to withdraw if it can be accomplished "without material adverse effect on the interests of the client." *Id*. Withdrawal is also optional with the lawyer under certain additional circumstances, even if withdrawal adversely affects the client. Thus a lawyer may withdraw under (b)(2)-(7) as follows:(b)(2) a client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent; (b)(3) the client has misused the lawyer's services in the past; (b)(4) the client insists on pursuing an imprudent or repugnant objective or one with which the lawyer has a fundamental disagreement; (b)(5) the client refuses to pay for the lawyer's services; (b)(6) the representation will result in an unreasonable financial burden on the lawyer or has been made unreasonably difficult by the client; or (b)(7) other good cause for withdrawal exists. *Id*.

taken no depositions and had retained no expert witnesses to testify at trial.

The Augustsons retained John Howie as new counsel, who hired expert witnesses, deposed the flight crew of the aircraft, and prepared the case for trial.  On the eve of trial LAN-Chile agreed to pay the Augustsons $850,000 plus up to $5,000 in expenses in order to settle the case.

Twelve days later the district judge conducted a lien hearing, and on July 22, 1994, entered an order awarding Speiser Krause fees of $98,714.78[4] and expenses in the amount of $11,435.22,[5] for a total of $110,150.00.

In its memorandum the district court listed several reasons why it believed Speiser Krause had the right to compensation: first, the plaintiffs failed to share vital information that they received with their attorneys; second, the plaintiffs refused to fix any sum that was acceptable for settlement purposes; third, the plaintiffs either lost faith or never had faith in Speiser Krause's ability sufficient to trust the firm's judgment; fourth, the pursuit of litigation would result in extensive expenses and additional attorneys fees that would only diminish, and possibly

---

[4]The district court's fee award was calculated to give the plaintiffs the benefits that would have inured to them had they accepted the $475,000 offer.

[5]The expenses included: (1) $2,129.06, the Augustsons portion of the shared investigation expensess of $12,775.39; (2) $2,330.61, the expenses spent on the Augustsons cases through April of 1993; and (3) $6,975.55, the expenses spent between May 1, 1993 and the date of withdrawal.

be fatal to, the plaintiffs' claim; and fifth, the plaintiffs "were intent on utilizing the Court and their counsel to vent the anger and frustration felt over the death of their daughter," and would find no solace in a settlement "until all involved were sufficiently punished or throttled by litigation."

The Augustson's now appeal the award of fees and expenses, and, in the alternative, argue that the method used to compute the award was incorrect. Because we agree no fee award should have been given, we do not address the validity of the computation.

## II.

The rights and obligations of parties to a contingency fee contract are governed by state law. *Johnston v. California Real Estate Inv. Trust*, 912 F.2d 788 (5th Cir. 1990). Therefore Speiser Krause's ability to recover is based upon Texas law.

## A.

Under Texas law, whether and how to compensate an attorney when a contingent fee contract is prematurely terminated depends on whether the attorney was discharged, withdrew with the consent of the client, or withdrew voluntarily without consent. An attorney discharged by the client without cause can recover on the contingent fee contract or in quantum meruit. *See Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969) (discharged attorney can recover on the contract); *Howell v. Kelly*, 534 S.W.2d 737, 739-40 (Tex.Civ.App.--Houston [1st Dist.] 1976, no writ) (discharged attorney has choice of remedies). An attorney

8

discharged with cause can recover in quantum meruit for services rendered up to the time of discharge. *Rocha v. Ahmad*, 676 S.W.2d 149, 156 (Tex.App.--San Antonio 1984, writ dism'd). When both parties assent to the contract's abandonment, the attorney can recover for the reasonable value of the services rendered. *Diaz v. Attorney General of Texas*, 827 S.W.2d 19, 22-23 (Tex.App.-- Corpus Christi 1992, no writ).

When an attorney, "without just cause, abandons his client before the proceeding for which he was retained has been conducted to its termination, or if such attorney commits a material breach of his contract of employment, he thereby forfeits all right to compensation." *Royden v. Ardoin*, 331 S.W.2d 206, 209 (Tex. 1960) (quoting *Beaumont v. J. H. Hamlen & Son*, 81 S.W.2d 24 (Ark. 1935)). *Royden* may be read to imply that an attorney who withdraws with just cause may be compensated, though we would not know whether on the contract or in quantum meruit.[6]

_____

[6]We uncovered no Texas case that has compensated an attorney after voluntarily withdrawing for just cause, so it is not clear whether the withdrawing attorney would recover on the contract or in quantum meruit. In *Staples v. McKnight*, 763 S.W.2d 914 (Tex.App.--Dallas 1988, no writ), the appellate court apparently would have allowed a recovery on the contract, but the court found there was no evidence of just cause to withdraw. Recovery on the contract would follow the rule in *Mandell & Wright* allowing recovery on the contract for attorneys discharged without cause.

The *Mandell & Wright* rule is the "traditional" but now minority rule, and this court has expressed its disfavor with it in *Johnston*, 912 F.2d at 789. Most jurisdictions, following *Martin v. Camp*, 114 N.E. 46 (N.Y. 1916), and *Fracasse v. Brent*, 494 P.2d 9 (Cal. 1972), limit the discharged attorney's recovery to quantum meruit (or to the lesser of quantum meruit and the contract price), refusing to apply normal contract rules to the

The fundamental issue in this case, then, is whether Speiser Krause had just cause to withdraw sufficient under Texas law to receive compensation. The attorney bears the burden of proving just cause to withdraw. *Staples v. McKnight*, 763 S.W.2d 914, 917 (Tex.App.--Dallas 1988, writ denied).

Whether just cause exists depends on the facts and circumstances of each case. *See id*. at 916 (citing *Matheny v. Farley*, 66 S.E. 1060, 1061 (W. Va. 1910)). Generally, just cause exists when the client has engaged in culpable conduct. Thus, for example, courts have found just cause where the client attempts to assert a fraudulent claim; fails to cooperate; refuses to pay for services; degrades or humiliates the attorney; or retains other counsel with whom the original attorney cannot work. *See* Wade R. Habeeb, Annotation, *Circumstances under Which Attorney Retains Right to Compensation Notwithstanding Voluntary Withdrawal from Case*, 88 A.L.R.3d 246-69 (1978 & Supp. 1995) (describing cases from various jurisdictions in which attorneys have retained the right to compensation after withdrawal).

Just cause has also been found where continued representation is impossible due to forces beyond the attorney's

---

attorney-client relationship because of the special trust and confidence that must exist between attorney and client. The majority jurisdictions reason that allowing recovery on the contract impinges on the client's absolute right to select the lawyer of his choice by forcing the client to pay double fees, one to his discharged attorney and one to his new lawyer. These jurisdictions typically imply a term into the contingency contract allowing discharge of the attorney at will, so that discharge is not considered a breach and does not give rise to contract damages. *See, e.g.*, *Martin*, 114 N.E. at 47-48.

control.  Thus just cause has been found where continued representation would violate ethical obligations of the attorney or where the attorney has insufficient funds to pursue litigation.  *See, e.g.*, *Staples*, 763 S.W.2d at 916 (allowing withdrawal where the client was going to permit perjury); *Estate of Falco v. Decker*, 233 Cal.Rptr. 807, 815-16 (Cal.Ct.App. 1987) (allowing compensation where ethical obligations mandate withdrawal); *International Materials Corp. v. Wolff*, 824 S.W.2d 890, 893-96 (Mo. 1992) (allowing compensation to attorney who withdrew for lack of resources).

Both parties agree, and the cases are in almost universal agreement, that failure of the client to accept a settlement offer does not constitute just cause for a withdrawing attorney to collect fees.  *See, e.g.*, *Borup v. National Airlines*, 159 F.Supp. 808, 810 (S.D.N.Y. 1958) ("[t]he mere fact that clients refuse to accept a settlement recommended by the attorney is not ground for his withdrawal"); *Estate of Falco*, 233 Cal.Rptr. at 815-16 (holding that failure to settle is not just cause to withdraw for the purposes of awarding attorney fees); *Faro v. Romani*, 641 So.2d 69 (Fla. 1994) (same); *Ambrose v. Detroit Edison Co.*, 237 N.W.2d 520, 523-24 (Mich.Ct.App. 1975) (failure to settle is never a sufficient reason justifying withdrawal, but, if it is irrational, it is one factor to consider in evaluating the client's cooperation with his attorney); *Chaker v. Chaker*, 520 A.2d 1005, 1007 (Vt. 1986) (holding that failure to settle is not just cause to withdraw for the purposes of awarding

11

attorney fees); *Ausler v. Ramsey*, 868 P.2d 877, 881 (Wash.Ct.App. 1994) (same); *but see Kannewurf v. Johns*, 632 N.E.2d 711, 714 (Ill.App.Ct. 1994) (an attorney is entitled to reasonable compensation where he voluntarily withdrew for the sole reason that the clients did not agree to accept a reasonable settlement offer or negotiate as the attorney thought best); *May v. Seibert*, 264 S.E.2d 643 (W.Va. 1980) (a lawyer who withdraws without just cause may recover under quantum meruit if withdrawal does not prejudice the client).

B.

Speiser Krause argues that because it withdrew for good cause, by permission of the court, under Tex. Disciplinary R. Prof. Conduct 1.15(b), it therefore satisfied the Texas just cause requirement for recovering attorneys fees.[7]  The propriety of the district court's decision to permit Speiser Krause's withdrawal is not now before us, and we assume the court correctly found good cause to withdraw.  Nevertheless, we conclude that *Royden* prohibits all compensation in this case.

*Royden* states that "'[i]f an attorney, without just cause, abandons his client . . . he thereby forfeits all right to compensation.'"  *Royden*, 331 S.W.2d at 209 (quoting *Beaumont v.*

---

[7]Speiser Krause relies particularly on Rules 1.15(b)(4) and (6), which allow withdrawal, respectively, where "a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent or with which the lawyer has fundamental disagreement," or where "the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client."  Tex. Disciplinary R. Prof. Conduct 1.15(b)(4), (6) (1991).

*J. H. Hamlen & Son*, 81 S.W.2d 24 (Ark. 1935)).  We reject Speiser Krause's argument that cause to withdraw under Rule 1.15 necessarily implies cause to receive compensation under *Royden*. Rule 1.15 addresses withdrawal under all circumstances and is not related to the issue of compensation.

The objectives of a hearing on cause to withdraw differ from the objectives of a hearing on attorney's fees, and because of these differences circumstances can arise that would authorize a trial court to permit counsel to withdraw but retain no fee. When considering a motion to withdraw, a trial court is given broad discretion in order to protect the best interests of the client.  In such a setting, the court generally focuses on the presence of circumstances harmful to the attorney-client relationship, and inquiry into the cause of these circumstances is irrelevant.  At a lien hearing, however, the focus of attention is on the cause of attorney-client problems.

A court at a withdrawal hearing must also be concerned about the quality of representation a client will receive from an attorney who has a fundamental disagreement with a client's objective, or who believes that the client's objective poses an unreasonable financial burden.  *See* Tex. Disciplinary R. Prof. Conduct 1.15(b)(4), (6) (1991).  But the objective is for the client to choose.  If the objective is neither illegal nor frivolous, then an attorney who is retained under a contingent fee contract and who withdraws because he disapproves of his client's objective may not receive compensation through the

court.  Any other rule would impinge on the client's right to choose the objectives of his representation.[8]

A contrary rule would also encourage attorneys to withdraw from "bad" cases on the grounds that the client uncooperatively insists on going to trial, allowing the attorney to avoid the risks of representation without losing the benefits of an eventual recovery.  It is in such "bad" cases that a client will have the most trouble finding another attorney, and the existence of an attorney's lien will make the search all the more difficult.

As for the lawyer, if he cannot persuade the client of his own views he can protect himself at the early stage by refusing to take the case, by charging higher than normal fees in other cases, or by limiting the scope of representation through contract.  At later stages the lawyer may weigh his choices to proceed or to terminate, perhaps seeking court approval to exit a case, even though he cannot obtain compensation.

Speiser Krause cites *Staples v. McKnight*, 763 S.W.2d 914 (Tex.App.--Dallas 1988, writ denied), in support of its argument that good cause under the rules of professional conduct

---

[8]We express no view on whether an attorney's withdrawal for ethical obligations may sometimes justify compensation.  Courts in Texas and other jurisdictions would allow compensation for some ethical violations.  *See, e.g.*, *Staples*, 763 S.W.2d at 917 (allowing compensation for an attorney who withdraws when his client was going to commit perjury); *Estate of Falco*, 233 Cal.Rptr. at 814 (allowing compensation when the rules of professional conduct required withdrawal).  However, the facts of the case at bar did not present an ethical dilemma for Speiser Krause.  Speiser Krause could have continued representing the Augustsons without violating any ethical obligations.

14

necessarily implies good cause under *Royden*.  In *Staples*, the court concluded that a client's intent to commit perjury is just cause for the attorney to withdraw and receive compensation under *Royden* (though the court denied compensation after finding no evidence that the client was going to perjure himself).  *Staples* stated that "[t]he critical question, then, is did [the former attorney] have just cause to withdraw," and then noted that "certain causes justifying an attorney's voluntary withdrawal are set forth in our Code of Professional Responsibility."  763 S.W.2d at 916 & n.1.  We do not read these statements to stand for the proposition that any cause to withdraw under the rules of professional responsibility satisfies *Royden*.

C.

Speiser Krause argues that they should be compensated because they were "constructively discharged" by the Augustsons. This assertion is meritless.  The Augustsons were intent on pursuing litigation, against the advice of counsel.  To that end they refused to accept an initial settlement offer or set a price at which they would settle.  Their decision was risky, but the record reveals the Augustsons understood the risk.  Speiser Krause makes no assertion that their lawsuit was frivolous. There is no indication that the attorney-client relationship had completely broken down through acrimony or failure to communicate.  In fact, the Augustsons opposed Speiser Krause's motion to withdraw.  On this record, it is clear that Speiser Krause withdrew because the Augustsons failed to accept its

15

advice to pursue settlement. Assuming *arguendo* that a client can "constructively discharge" an attorney, such a discharge may not be effected by a client's refusal to follow counsel's advice on settlement.

The district court found that the Augustsons withheld vital information from Speiser Krause. The uncontroverted testimony was that Clyde Augustson received a report from the state department which contained information he felt was material to the issue of willful misconduct. The Augustsons were interested in finding out the firm's response to the report. Clyde spoke with Speiser Krause about the report several times. He sent them his synopsis of the report. The firm never asked for the entire report, and he assumed the firm had a copy. Under these facts it was clearly erroneous to find that the Augustsons kept material information from Speiser Krause.

The district court also believed the Augustsons were using litigation to vent their rage against LAN-Chile and to find out all they could about the circumstances of their daughter's death, without regard to whether the information was relevant to their lawsuit. We will not attempt to separate out the mixed motivations of a litigant. Undoubtedly the Augustsons found solace in some of the crash information uncovered by litigation, but that casts no suspicion on the legitimate use of discovery in pursuit of their legitimate claim. Certainly the Augustsons wanted LAN-Chile to admit to wrongdoing, but that is a legitimate goal in our legal system. The short answer to the district

court's position is that events proved the Augustsons correct. They believed there was willful misconduct, they pursued their claim vigorously through litigation and achieved a settlement of $855,000, nearly twice the recovery Speiser Krause had urged them to accept.

Speiser Krause argues strenuously that this is not a mere "failure to accept settlement" case, urging that the plaintiffs never had sufficient confidence in Speiser Krause to give them a demand of the amount of money they wished to recover; that the case was made unreasonably difficult by the failure of plaintiffs to fix an amount for which Speiser Krause could negotiate; that the plaintiffs fundamentally disagreed with experienced counsel about how to proceed; and that the plaintiffs' pursuit of discovery was inimicable to their interests because it might uncover negligence but no willful misconduct.

These arguments are unconvincing. A lawyer is an agent of his client. *Texas Employers Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 93 (1961). Under the Texas Disciplinary Rules of Professional Conduct "a lawyer shall abide by a client's decisions: (1) concerning the objectives and general methods of representation; [and] (2) whether to accept an offer of settlement of a matter, except as otherwise authorized by law." Tex. Disciplinary R. Prof. Conduct 1.02(a) (1991). Under the Augustsons' contingent fee contract, the Augustsons had the right to refuse any settlement agreement, and Speiser Krause agreed to

17

prepare the case for trial.  The Augustsons also had the right to have their claim adjudicated in the federal courts.

Under all these sources the Augustsons had the right to pursue litigation first and settlement later, if at all. Admittedly litigation contained risks, and may indeed have hurt the Augustsons claims.  But that was the Augustsons risk to take.[9]

### III.

We conclude that this record establishes as a matter of law that Speiser Krause had no justification or cause to withdraw that would preserve its entitlement to compensation.  Under Texas law Speiser Krause terminated its right to compensation by its withdrawal.  The expenses incurred by Speiser Krause prior to its withdrawal are not affected by all that has been said.  We remand the case to the district court for it to award Speiser Krause only its actual reasonable expenses attributable to the Augustsons prior to the time Speiser Krause withdrew from representation of the Augustsons.

REVERSED AND REMANDED

---

[9]The district court expressed concern over the difficult position Speiser Krause faced.  The Augustsons, in the court's view, were intent on pursuing ill-advised litigation which likely would harm their claim and possibly lead to a malpractice suit against Speiser Krause.  We do not deny that such suits sometimes occur where litigation fails, but we do not believe such a possibility warrants compensation for a withdrawing attorney, at least where, as here, the possibility of a malpractice suit is nothing but conjecture and the attorney has protected himself by recommending settlement.

18